DUNCAN, J.
*642 **649 In this criminal case, defendant asserts that the trial court erred in calculating his criminal history score under the felony sentencing guidelines. Under the guidelines, prior convictions generally increase a defendant's criminal history score, unless they arose out of the same criminal episode as the crime for which the defendant is being sentenced. In this case, defendant was convicted of multiple crimes based on child pornography on his computer. Over defendant's objection, the court increased defendant's criminal history score after it sentenced him for each of the crimes, until it reached the maximum criminal history score.
Defendant appealed, arguing, among other things, that his convictions were based on his possession of multiple images of child pornography at the same time and place and that possession of multiple items of contraband at the same time and place constitutes a single criminal episode. The Court of Appeals affirmed. State v. Dulfu , 282 Or. App. 209, 386 P.3d 85 (2016). On review, we reverse and remand.
As explained below, the rule that governs the calculation of a defendant's criminal history score, OAR 213-004-0006, provides that a defendant's criminal history score is based on the defendant's criminal history at the time the defendant's "current crimes" are sentenced; therefore, a defendant's "current crimes" do not count toward the score. The legislative history of the rule shows that, by "current crimes," the drafters of the rule were referring to crimes arising from the same "criminal episode," which they understood to include crimes that, under the statutory and constitutional double jeopardy provisions, must be brought in a single criminal prosecution. Thus, a conviction does not count toward a defendant's criminal history score if, for double jeopardy purposes, it arose out of the same criminal episode as the crime for which the defendant is being sentenced. In other words, if double jeopardy principles require crimes to be joined in a single criminal prosecution, then a conviction for one of the crimes cannot be used to increase the defendant's criminal history score for sentencing on any of the other crimes.
**650 In this case, the state prosecuted defendant for multiple crimes based on the possession of multiple items of contraband at the same time and place, and, under double jeopardy rules, those crimes were part of a single criminal episode. Therefore, the trial court erred in using defendant's convictions for those crimes to increase his criminal history score as it did.
I. HISTORICAL AND PROCEDURAL FACTS
Law enforcement officers seized and searched defendant's computer and duplicated its hard drive. During a search of the duplicated hard drive, a forensic investigator discovered computer files containing visual recordings of sexually explicit conduct involving children. The state charged defendant with crimes based on 15 of the files. For each of the 15 files, the state charged defendant with one count of encouraging child sexual abuse in the first degree (ECSA I), ORS 163.684, and one count of encouraging child sexual abuse in the second degree (ECSA II), ORS 163.686, for a total of 30 counts. (For example, Count 1, which charged defendant with ECSA I, and Count 16, which charged defendant with ECSA II, were based on the same file.) The indictment alleged that the crimes occurred on eight different dates.[1]
*643 As relevant here, a person commits ECSA I if the person either knowingly "duplicates * * * a visual recording of sexually explicit conduct involving a child" or knowingly "possesses * * * such a visual recording with the intent to * * * duplicate" it. ORS 163.684(1)(a)(A).[2] And, as relevant **651 here, a person commits ECSA II if the person "knowingly possesses * * * a visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person." ORS 163.686(1)(a)(A)(i). Thus, ECSA I applies to the duplication of recordings and the possession of recordings with intent to duplicate them, whereas ECSA II applies to the possession of recordings for a sexual purpose.
The case was tried to a jury. The state presented evidence that the 15 files were on defendant's computer when it was seized from his house and that defendant downloaded the 15 files on eight different dates. The state argued that defendant was guilty of the ECSA I counts because he had possessed the files with the intent to duplicate them; it also argued, in the alternative, that defendant was guilty of those counts because he had duplicated the files by downloading them. The state did not elect a theory of ECSA I, and the jury verdict form did not identify a theory. The jury convicted defendant on all 30 counts (one ECSA I count and one ECSA II count for each file).
The trial court sentenced defendant on the ECSA I counts first. Under the sentencing guidelines, a defendant's presumptive sentence for a crime is based on the crime seriousness ranking of the crime and the defendant's criminal history score. OAR 213-004-0001. The guidelines include a 99-block grid, with eleven crime serious categories on the vertical axis, ranging from "1" to "11," and nine criminal history categories on the horizontal axis, ranging from "A" to "I." Id. (describing the sentencing guidelines grid); OAR ch. 213, App. 1 (setting out sentencing guidelines grid); OAR 213-017-0000 - 213-017-0011 (setting forth the complete crime seriousness scale); OAR 213-004-0006 (describing the criminal history scale). "A" is the highest criminal history category and applies if a defendant's "criminal history includes three or more person felonies in any combination **652 of adult convictions or juvenile adjudications." OAR 213-004-0007. "I" is the lowest criminal history category and applies if a defendant's criminal history "does not include any juvenile adjudication for a felony or any adult conviction for a felony or Class A misdemeanor." Id. When sentencing a defendant for a crime, a trial court identifies the crime's seriousness ranking on the vertical axis and the defendant's criminal history score on the horizontal axis, and the gridblock where those axes intersect contains the presumptive sentence for the defendant's crime. OAR 213-004-0001.
ECSA I has a crime seriousness ranking of "8." OAR 213-017-0004(14). Defendant's criminal history score for Count 1 was "I." Therefore, defendant's gridblock for Count 1 was "8-I," for which the presumptive prison term is 16-18 months. See OAR ch. 213, App 1 (showing presumptive sentences for gridblock). The trial court imposed an 18-month prison term on Count 1.
The trial court then had to determine whether to include defendant's conviction on Count 1 when calculating his criminal history score for Count 2. The calculation of a defendant's criminal history is governed by *644 OAR 213-004-0006, which provides, in part, that a defendant's criminal history is based on the number of convictions "in the offender's criminal history at the time the current crime or crimes of conviction are sentenced."
Defendant argued that, under this court's case law, a conviction cannot be included in a defendant's criminal history if it arose out of the same "criminal episode" as the crime for which the defendant is being sentenced. See State v. Cuevas , 358 Or. 147, 150, 361 P.3d 581 (2015) (so stating). Defendant further argued that the term "criminal episode" has the same meaning for the purposes of the criminal history calculation as it does for the purposes of double jeopardy analysis. Thus, according to defendant, if two crimes were part of the same criminal episode for double jeopardy purposes and, therefore, had to be joined in a single criminal prosecution, then they were also part of the same criminal episode for criminal history calculation purposes. They are the defendant's "current" crimes, and a conviction for one of them cannot be used to increase the defendant's criminal **653 history score for any of the others. Applying that rule, defendant argued that, under State v. Boyd , 271 Or. 558, 571, 533 P.2d 795 (1975), his convictions arose out of a single criminal episode for double jeopardy purposes and, by extension, for criminal history purposes.
In Boyd , a double jeopardy case, this court held that two charges based on the defendant's possession of two different items of contraband at the same time and location arose out of a single criminal episode. Id. In this case, defendant relied on Boyd to argue that his convictions based on the possession of different pornographic images at the same time and location arose out of a single criminal episode and, as a result, none of the convictions could be used to increase his criminal history score for any of the others.
The state agreed that, if multiple convictions arise out of a single criminal episode, none of the convictions can be used to increase a defendant's criminal history score for any of the others; but the state did not agree that defendant's convictions arose out of a single criminal episode. The state contended that defendant's criminal history score could be increased for each crime committed on a different date.
The trial court rejected defendant's argument that, because the state had prosecuted him for possession of the computer files at the same time and place, his convictions arose out of a single criminal episode. The trial court did so by making its own finding regarding the basis for defendant's guilt on the ECSA I counts. Specifically, the trial court found that defendant was guilty of the ECSA I counts because he duplicated the images by downloading them:
"[Defendant's] conduct was not one criminal episode, but rather multiple criminal offenses. I find that he was convicted of downloading and duplicating these videos on eight separate dates."
Accordingly, the trial court increased defendant's criminal history score for sentencing on Count 2 and each of the remaining counts until it reached the maximum criminal history score of "A."
Increasing defendant's criminal history score increased defendant's presumptive sentences. As mentioned, **654 on Count 1 defendant's gridblock was 8-I, for which the presumptive prison term is 16-18 months. Because the court included defendant's conviction on Count 1 in its calculation of his criminal history score on Count 2, defendant's gridblock on Count 2 was 8-D, which carries a presumptive prison term of 27-28 months. Then, because the court continued to increase defendant's criminal history score after sentencing defendant for each conviction, defendant's gridblock on Count 3 was 8-B, which carries a presumptive prison term of 35-40 months, and his gridblock on Count 4 was 8-A, which carries a presumptive prison term of 41-45 months. Because "A" is the highest criminal history score, defendant's gridblock on the remaining ECSA I counts was 8-A, and his gridblock on all the ECSA II counts was 5-A. See OAR 213-017-0007(9) (providing that ECSA II has a crime seriousness ranking of 5).
On each count, the trial court imposed the *645 maximum presumptive prison term.[3] The court ordered defendant to serve some of the prison terms consecutively, for a total of 180 months (15 years).
Defendant appealed, renewing his argument that all his convictions arose from a single criminal episode and, therefore, none of his convictions could be used to increase his criminal history score for sentencing him on any of the others. The Court of Appeals affirmed.
II. PARTIES' ARGUMENTS ON REVIEW
On review, the parties agree that the issue in this case is whether defendant's convictions arose out of a single criminal episode for the purposes of the criminal history rule, OAR 213-004-0006. But, they do not agree on what constitutes a criminal episode or whether defendant's crimes were part of a single criminal episode.
Defendant argues that the term "criminal episode" has the same meaning in the criminal history context as it does in the double jeopardy context and, therefore, if crimes must be joined in a single criminal prosecution for double **655 jeopardy purposes, a conviction for one cannot be used to increase the defendant's criminal history score for any of the others. Defendant further argues that there are multiple tests for determining whether crimes are part of the same criminal episode, and that this court identified three of them in Boyd . As discussed below, one is the "same act or transaction" or "cross-related" test, which is whether the charges are for crimes that " 'are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.' " Boyd , 271 Or. at 563-64, 533 P.2d 795 (quoting State v. Fitzgerald , 267 Or. 266, 273, 516 P.2d 1280 (1973) ). Another is the "same criminal objective test," which is whether the charges are for " 'continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective.' " Id. at 564-65, 533 P.2d 795 (quoting ORS 131.505(4) ). And, a third is whether the crimes are for the possession of contraband at the same time or place. Id. at 570-71, 533 P.2d 795. Defendant argues that, under each of those three tests, his crimes were part of a single criminal episode.
In response, the state argues that the only test for whether crimes are part of a single criminal episode for the purposes of the criminal history rule is the "same criminal objective" test. Under that test, the state contends that defendant's crimes were not part of a single criminal episode because, even though the jury did not make an express finding regarding the bases for its verdicts on the ECSA I counts-that is, even though the jury did not expressly find whether defendant duplicated the files or possessed them with the intent to duplicate them-the trial court itself could find that defendant was guilty of the ECSA I counts for duplicating the files by downloading them, and the trial court could further find that defendant downloaded the files on eight separate dates, during eight separate criminal episodes. Alternatively, the state argues that, even if the trial court itself could not make a finding that defendant duplicated the images and even if the other two tests apply, defendant's crimes were not part of a single criminal episode under any of the tests because defendant came into possession of the images at eight different times. Finally, the state **656 argues that, even if defendant's crimes were part of a single criminal episode and the trial court erred in calculating his criminal history scores as it did, the error was harmless because the trial court "could and would impose the same total sentence on remand."
Thus, although the parties agree that a conviction cannot be used to increase a defendant's criminal history score if it arose out of the same criminal episode as the conviction for which the defendant is being sentenced, they disagree about what constitutes a criminal episode for the purposes of the criminal history rule. To resolve that disagreement, we must interpret that rule.
*646 III. ANALYSIS
The Oregon Felony Sentencing Guidelines were developed by the Oregon Criminal Justice Council, adopted as administrative rules by the Sentencing Guidelines Board, and expressly approved by the legislature. Oregon Sentencing Guidelines Implementation Manual 3 (1989) (hereafter Guidelines Implementation Manual ); Laird C. Kirkpatrick, Mandatory Felony Sentencing Guidelines: The Oregon Model, 25 U.C. Davis L. Rev. 695, 699-700 (1992) ; State v. Davis , 315 Or. 484, 486-87, 847 P.2d 834 (1993). The guidelines were intended to address two primary concerns: inconsistent sentencing practices and prison overcrowding. Or. Laws 1987, Ch. 619 (providing that sentencing decisions "must be made on a systemic basis that will maintain institutional populations within a level for which the Legislative Assembly and the people of the state are prepared to provide"); see also OAR 213-002-0001(3)(a) ("The response of the corrections system to crime * * * must reflect the resources available for that response. A corrections system that overruns its resources is a system that cannot deliver * * *.").
When interpreting a sentencing guidelines rule, this court applies the methodology for interpreting statutes outlined in PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993), as modified by State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009). See also State v. Bucholz , 317 Or. 309, 314, 855 P.2d 1100 (1993) (stating that when interpreting a sentencing guideline rule **657 this court's "normal procedure for interpreting statutes applies"). We first examine the text and context of the rule, Gaines , 346 Or. at 172, 206 P.3d 1042, including related statutes and case law, State v. Klein , 352 Or. 302, 309, 283 P.3d 350 (2012). We then consider any legislative history that appears helpful to our analysis. Gaines , 346 Or. at 172, 206 P.3d 1042. If the legislature's intent remains unclear, we apply general maximums of statutory construction to resolve the uncertainty. Id .
A. Text of the Criminal History Rule
We begin with the text of the criminal history rule. OAR 213-004-0006 provides, in part:
"(2) An offender's criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime or crimes of conviction are sentenced ."[4]
(Emphasis added.)
OAR 213-004-0006(2) establishes the point in time at which a defendant's criminal history score is to be calculated for sentencing purposes: "the time the current crime or crimes of conviction are sentenced." The drafters' use of the plural term "crimes" reflects their recognition that a defendant may have multiple current crimes of conviction. Under **658 the rule, if a defendant has multiple current crimes of conviction, the defendant's criminal history score is calculated at "the time" those "crimes" are sentenced. The drafters' use of the singular "time" and the plural "crimes" indicates that they intended that, when a defendant has multiple current crimes of conviction, the defendant's criminal history score is calculated *647 at one time-specifically, at the outset of the sentencing of the group of crimes. That is, the defendant's criminal history score is calculated before the sentencing on the first crime and remains the same for sentencing on the remainder of the group of crimes.
If the drafters of the criminal history rule had intended that, when a defendant has multiple current crimes of conviction, each conviction could be used to increase the defendant's criminal history on the subsequent convictions, the drafters would have simply stated that a defendant's criminal history score is based on the defendant's criminal history at the time the current "crime" is sentenced. As the Court of Appeals has observed, "If, upon sentencing, each crime becomes part of the criminal history, * * * then the reference in the rule to prior convictions at the time of the crimes of conviction becomes mere surplusage." State v. Allen , 151 Or. App. 281, 290-91, 948 P.2d 745 (1997) (emphasis added). To hold that a defendant's criminal history score must be increased after each crime is sentenced would be to ignore the express reference to "crimes" of conviction, which we are not to do. See ORS 174.010 (providing that courts are not to "omit what has been inserted" when construing statutes).
Thus, the plain text of OAR 213-004-0006 shows that, when a defendant is sentenced for multiple current crimes, none of the current crimes are to be used in the calculation of the defendant's criminal history. The question then becomes: what are a defendant's "current crimes"? For the answer to that question, we look to this court's decisions in Bucholz , State v. Miller , 317 Or. 297, 855 P.2d 1093 (1993), and Cuevas , in which this court construed the criminal history rule. See State v. Cloutier , 351 Or. 68, 100, 261 P.3d 1234 (2011) (stating that a statute's context includes prior cases interpreting the statute).
**659 B. Cases Construing the Criminal History Rule
As discussed below, in Bucholz and Miller , this court construed the criminal history rule as originally adopted, former OAR 253-04-006 (Nov. 1, 1989). In Bucholz , this court stated that the legislative history of the rule indicated that the drafters of the rule did not intend a conviction to be used to increase a defendant's criminal history score if the conviction arose out of the same "criminal episode" as the conviction for which the defendant was being sentenced. Bucholz , 317 Or. at 317, 855 P.2d 1100. In other words, the legislative history indicated that the drafters equated a defendant's "current crimes" with the crimes committed in the same "criminal episode." In Miller , this court followed Bucholz and noted that the drafters presumed that crimes joined in a single criminal prosecution would be limited to those that had been committed as part of a single criminal episode. Miller , 317 Or. at 302-06, 855 P.2d 1093. In Cuevas , this court again construed the criminal history rule, which had been amended and renumbered to its current version, OAR 213-004-0006 (Mar. 8, 1996), and it adhered to its earlier decisions in Bucholz and Miller . It held that a conviction does not count as part of a defendant's criminal history if it arose out of the same "criminal episode" as the conviction for which the defendant is being sentenced. Cuevas , 358 Or. at 154, 361 P.3d 581. Because Bucholz , Miller , and Cuevas concern the meaning of "criminal episode" in the criminal history context-and because the parties dispute that meaning-we examine those cases in some detail.
1. State v. Bucholz
In Bucholz , the issue was whether a defendant's current crimes include all the crimes for which the defendant is sentenced in a single day, regardless of whether the crimes were committed, charged, or tried together. The defendant in Bucholz was charged, in separate indictments, with one count of theft and one count of delivery of methamphetamine. The crimes were committed more than a month apart. The defendant pleaded guilty to both crimes and both cases were set for sentencing on the same day. After sentencing the defendant in the theft case, the trial court used **660 the theft conviction to increase the defendant's criminal history score for sentencing in the drug case.
The defendant appealed, arguing that the trial court had erred in calculating his criminal history score. Specifically, he argued that "the theft conviction, having been sentenced on the same day as the drug conviction, could *648 not be counted in [his] criminal history as a prior conviction." Bucholz , 317 Or. at 311, 855 P.2d 1100. The Court of Appeals agreed, holding that "the legislative history [of the criminal history rule] demonstrates a legislative intent that convictions sentenced at the same time are present convictions that are not counted in the criminal history, irrespective of rules governing prior criminal history." State v. Bucholz , 113 Or. App. 705, 707, 834 P.2d 456 (1992) (first emphasis added; second and third emphases in original).[5] **661 The legislative history on which the Court of Appeals relied included a statement from one of the drafters of the rule, Judge James Ellis, that, when a defendant appears in front of a court for sentencing on multiple crimes, the crimes are "present convictions," not "prior convictions." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, June 20, 1989, Tape 103, Side A (statement of Judge James Ellis). Ellis made the statement when the drafters were discussing whether, when a defendant is being sentenced on multiple crimes, the rule requires a trial court to increase a defendant's criminal history score after imposing each sentence. One of the drafters, Representative Kelly Clark, identified the issue before the drafters as whether, "when you've got one criminal episode, but you've got four or five offenses," the offenses count "as prior criminal history for purposes of sentencing."Id. (statement of Rep. Kelly Clark). Clark then asked Ellis how he understood the rule, and Ellis answered:
"The defendant who's before you for sentencing on four different felonies at the same time-three of those are not to me prior convictions. They're present convictions . * * * So you wouldn't count them as part of prior criminal history, no matter what rule you use for figuring prior criminal history."
Id. (statement of Judge James Ellis) (emphasis added). The other drafters agreed with *649 Ellis's statement. Id. Later in the discussion, Clark referred back to Ellis's statement and voiced his agreement again, stating, "[I]t seems to me the question being whether you're talking about this criminal episode or some intervening criminal episode. * * * If it's this criminal episode-I agree with Judge Ellis-that's not a prior criminal history. That's this criminal history-the **662 one for which you're being sentenced."[6] Id. (statement of Rep. Kelly Clark).
In keeping with the drafters' expressed understanding of the rule, the official commentary to the rule explains the drafters' intention regarding the calculation of a defendant's criminal history score when the defendant has multiple current offenses. Guidelines Implementation Manual 50-51 (1989). It states:
"[T]he offender's criminal history is to include all prior convictions * * * entered against the offender 'at the time the current crime or crimes of conviction [are] sentenced.'
"This reference to 'current crime or crimes of conviction' was intended to prohibit the consideration of convictions arising from the current proceeding in classification of the offender's criminal history."
Id. (emphasis added; citation omitted).[7]
Based on the legislative history of the criminal history rule, the Court of Appeals held that, because the **663 defendant's theft conviction and drug conviction were sentenced at the same time, the trial court had erred in using the theft conviction to increase the defendant's criminal history score on the drug conviction. Bucholz , 113 Or. App. at 707, 834 P.2d 456 (citing discussion of legislative history of former OAR 253-04-006(2) in State v. Seals , 113 Or. App. 700, 703-04, 833 P.2d 1344 (1992) ).
On review, this court reversed the decision of the Court of Appeals. Bucholz , 317 Or. at 312, 855 P.2d 1100. It acknowledged the legislative history upon which the Court of Appeals had relied, but did not interpret it as broadly as the Court of Appeals had. Id. at 315-18, 855 P.2d 1100. This court rejected the defendant's argument that the legislative history showed that the criminal history rule prohibited the "use of any conviction for which [the] sentence was pronounced on the same day in calculating a defendant's criminal history score." Id. at 315-16, 855 P.2d 1100. It explained that the legislative history showed only that the drafters "distinguished between a single criminal episode , which they thought was not prior criminal history for use in sentencing on some other conviction from the same episode, and crimes from more than one episode ." Id. at 317, 855 P.2d 1100 (emphases added). According to this court, it was in the context of discussing *650 separate convictions from a single criminal episode that the drafters agreed with Judge Ellis's comment that the convictions were not "prior convictions," but instead were "present convictions." Id. Similarly, this court explained that the commentary's reference to "convictions arising from the current proceeding," appeared to be a reference to convictions for crimes "committed in a single criminal episode." Id. at 318, 855 P.2d 1100 (observing that "the wording of the commentary [regarding the prohibition against using convictions from the current proceeding to increase a defendant's criminal history score] makes the most sense if it is taken to be addressing only multiple convictions from a single criminal episode"). Thus, this court concluded, the legislative history of the criminal history rule establishes, at most, that a conviction cannot be used to increase a defendant's criminal history score for sentencing on another conviction arising out of the same criminal episode. Id. at 317-18, 855 P.2d 1100. Consequently, the legislative history did not aid the defendant, because there was no dispute that his theft and **664 drug convictions arose out of separate criminal episodes; as this court observed, the defendant's theft crime was committed more than one month before the drug crime, and the two crimes were "separate and distinct." Id. at 313, 855 P.2d 1100. Because the theft crime was not part of the same criminal episode as the drug crime, defendant's theft conviction could be used to increase his criminal history score for sentencing on the drug crime.
To summarize, the legislative history discussed in Bucholz shows that the drafters of the criminal history rule recognized that a defendant could appear before a trial court for sentencing on multiple crimes, which the drafters described as "current" crimes. The legislative history also shows that the drafters did not intend the trial court's pronouncement of sentence on each current crime to result in an increase in the defendant's criminal history score on the remaining crimes. In addition, the history shows that the drafters equated the defendant's "current" crimes with all the defendant's crimes that arose out of the same "criminal episode." That equation made sense, given that-as this court held in Miller , which was decided the same day as Bucholz and is discussed below-the drafters presumed that the only charges that would be before a trial court as part of the same criminal proceeding or case were those for crimes committed as part of a single criminal episode, because those were the only charges that could be joined at the time.
2. State v. Miller
In Miller , the defendant was charged with committing multiple crimes against each of three different victims on three different dates. The charges were joined in a single indictment, but there was no dispute that they arose out of three separate criminal episodes. Therefore, following Bucholz , this court held that the defendant's convictions for each criminal episode could be used to increase his criminal history score for sentencing the convictions in each of the subsequent criminal episodes. Miller , 317 Or. at 302, 855 P.2d 1093 (holding that the trial court had not erred when it "considered the August 14 series of acts in sentencing [the] defendant on the August 26 and September 2 series of acts " (emphasis added) ).
**665 In Miller , this court also considered whether the sentencing guidelines rule that limits the total amount of prison time that can be imposed through consecutive sentences applied to the defendant's convictions. The rule, which was previously numbered former OAR 253-12-020 (Mar. 8, 1996), and is now numbered OAR 213-012-0200, limits the total amount of prison time for consecutive sentences to 200 percent of the prison term for the defendant's primary offense. The defendant in Miller argued that the limit applied to all his convictions, even though they arose from three separate criminal episodes. This court disagreed, accepting the state's argument that the 200 percent rule applies only to consecutive sentences for convictions arising from a single episode. Miller , 317 Or. at 306, 855 P.2d 1093. This court acknowledged that the text of the 200-percent rule does not contain any such limit. Id . at 303, 855 P.2d 1093. But this court reasoned that the legislature, which approved the rule, would have presumed that the rule applied only to sentences for convictions committed as part of a single criminal episode, because, *651 when the rule was drafted, those were the only crimes that could be joined in a single criminal prosecution. Id. at 303-05, 855 P.2d 1093. In other words, this court accepted the state's argument that
"the legislature, in approving the 200 percent rule, must have had in mind that the rule would apply only to offenses arising from criminal charges from a single criminal episode because, at the time that the 200 percent rule was proposed by the council, promulgated by the board and in the process of being adopted by the legislature, only single-episode criminal acts could have been joined in one indictment or criminal case. ORS 132.560(1) (1987)."[8]
Miller , 317 Or. at 303, 855 P.2d 1093. This court acknowledged that, in the same 1989 legislative session in which the legislature **666 approved the sentencing guidelines, including the 200-percent rule, the legislature expanded the bases for joinder of charges under ORS 132.560, the permissive joinder statute. Miller , 317 Or. at 303-04, 855 P.2d 1093 (citing Or. Laws 1989, ch. 842, § 1).[9] Despite that amendment, this court in Miller held that the legislature intended the 200-percent rule to apply only to those charges that "could have been joined in one indictment or criminal case" prior to the expansion of the bases for permissive joinder under ORS 132.560. Miller , 317 Or. at 303-06, 855 P.2d 1093. And, this court described those charges as charges "from a single criminal episode." Id. at 306, 855 P.2d 1093. Thus, Miller stands for the proposition that the drafters of the sentencing guidelines presumed that the only crimes that would be joined were those that were part of the "same act or transaction," which it equated with those that were committed as part of the same "criminal episode." That description was consistent with this court's decision in Boyd , in which it stated that there was an "equivalence" between crimes that were committed as part of the "same act or transaction," and crimes that were committed as part of the same "criminal episode." Boyd , 271 Or. at 565, 533 P.2d 795.
Since Bucholz and Miller , both this court and the Court of Appeals have held that the sentencing guidelines limits on increasing a defendant's criminal history score and imposing consecutive sentences apply only to convictions arising out of the same criminal episode. See, e.g. , State v. Martin , 320 Or. 448, 451-52, 887 P.2d 782 (1994) ; State v. Plourd , 125 Or. App. 238, 242, 864 P.2d 1367 (1993).
3. State v. Cuevas
In Cuevas , the defendant asked this court to overrule its decisions in Bucholz and Miller , asserting that it had erred in holding that the criminal history rule and the 200-percent rule apply only to sentences for convictions arising out of a single criminal episode. This court reviewed the decisions and explained that they both
**667 "start from a proposition that the court identified in Miller . The court explained that, when the Criminal Justice Sentencing Commission drafted the sentencing guidelines rules, 'only single-episode criminal acts could have been joined in one indictment or criminal case' and sentenced in a single judicial proceeding. The court noted that the sentencing guidelines rules were consistent with that assumption. That is, they limited the length of consecutive sentences imposed in a single judicial proceeding on the assumption that the offenses being sentenced in that proceeding arose out of a single criminal episode.
*652 However, the sentencing guidelines did not place that limit on sentences imposed in separate proceedings, which would have arisen out of separate criminal episodes.
"* * * * *
"That same context informed the court's decision in Bucholz ."
Cuevas , 358 Or. at 152-23, 361 P.3d 581 (emphasis added; citations omitted). In other words, Bucholz and Miller were based on the proposition that the drafters of the rules at issue had assumed that the rules would apply only to charges that could be joined in a single criminal case, and the only charges that could be joined in a criminal case were those that arose out of a single criminal episode.
This court adhered to that view in Cuevas , noting that, in the 20 years since they had been decided, Bucholz and Miller had become "an integral part of the fabric of Oregon sentencing laws," and "[d]uring that time, neither the legislature nor the Oregon Criminal Justice Commission [had] amended the sentencing guideline rules to restore what [the] defendant contend[ed] was the true meaning of those rules." Cuevas , 358 Or. at 154, 361 P.3d 581. "Those considerations," this court concluded, "counsel[ed] against disturbing the decisions in Miller and Bucholz ." Id. Therefore, this court declined the defendant's invitation to overrule the decisions and, as relevant to the issue in this case, the law is that, "when a court sentences a defendant for multiple convictions in a single sentencing proceeding, the sentence imposed on the first conviction counts as part of the defendant's criminal history in determining the sentence for the second **668 conviction unless the convictions arose out of a single criminal episode." Id. at 149-50, 361 P.3d 581.
Thus, the question in this case becomes what the drafters of the criminal history rule understood a "criminal episode" to be. As noted, the parties dispute the meaning of that term in the criminal history context.
C. The Meaning of "Criminal Episode" in the Criminal History Context
The legislative history of the criminal history rule discussed above provides clues about what the drafters of the rule understood the term "criminal episode" to mean. First, at the time the drafters used the term, it had an established meaning in the double jeopardy or former jeopardy context. See, e.g. , Boyd , 271 Or. at 563-571, 533 P.2d 795 (discussing meaning of criminal episode); State v. Shields , 280 Or. 471, 473, 571 P.2d 892 (1977) (noting that a defendant may not be serially prosecuted for crimes arising out of the same criminal episode). Thus, the drafters' use of the term suggests that they intended it to have the same meaning as it does in the double jeopardy context. Second, the drafters used the term to describe crimes that could be in front of a court in a single criminal proceeding, that is, crimes that could be joined. That use suggests that, at a minimum, the legislature intended the term to have the same meaning as it does in the double jeopardy context, because the statutory and constitutional double jeopardy provisions govern mandatory joinder. See Or. Const., Art. I, § 12 ; ORS 131.515. Under those provisions, if crimes are part of the same criminal episode, they cannot be prosecuted serially; if they can be prosecuted in the same court and are known to the prosecutor, they must be joined. Third, nothing in the legislative history of the rule indicates that the drafters intended the term to have one meaning in the criminal history context and a different meaning in the double jeopardy context, which would lead to significant confusion. Instead, it appears that the drafters concluded, at a minimum that, if crimes were sufficiently related that they had to be brought in a single criminal proceeding, then a conviction for one could not be used to increase the defendant's criminal history score for sentencing on the others. Consequently, we **669 conclude that the term "criminal episode" has the same meaning in the criminal history context as it does in the double jeopardy context.
That conclusion leads to the question whether defendant's crimes were part of the same criminal episode, as that term is used in the double jeopardy context; that is, whether defendant's crimes had to be joined in a single criminal case. On that issue, this court's decision in Boyd is dispositive.
*653 D. The Meaning of "Criminal Episode" in the Double Jeopardy Context
In Boyd , police officers searched the defendant's house and discovered a stolen television and amphetamines. In separate indictments, the state charged the defendant with theft, based on her possession of the television, and criminal activity in drugs, based on her possession of the amphetamines. Boyd , 271 Or. at 560, 533 P.2d 795 ("Both charges were based solely upon her possession of the contraband items.") The theft case was tried first, and a jury found the defendant not guilty. The defendant then moved to dismiss the indictment in the drug case on double jeopardy grounds, relying on Article I, section 12, of the Oregon Constitution, which provides, "No person shall be put in jeopardy twice for the same offence [sic ]," and State v. Brown , 262 Or. 442, 497 P.2d 1191 (1972), in which this court held:
"[U]nder Article I, section 12, of our constitution, a second prosecution is for the 'same offense' and is prohibited if (1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution."
Id. at 457-58, 497 P.2d 1191. The trial court granted the defendant's motion to dismiss the indictment, and the Court of Appeals affirmed.
On review, this court endeavored to clarify when charges must be brought in a single prosecution to avoid violating Article I, section 12, which protects defendants against "undue harassment." Boyd , 271 Or. at 562-63, 533 P.2d 795. It identified three alternative tests for determining when a **670 prosecution for one charge will bar a later prosecution for another charge.
The first test is whether the charges arose out of the same "act or transaction," as that term was defined in Fitzgerald , for the purposes of permissive joinder under ORS 132.560. In Fitzgerald , this court held that "two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." Fitzgerald , 267 Or. at 273, 516 P.2d 1280. That test is referred to as the "cross-related" test, and, although it was first articulated as a test for permissive joinder, this court held in Boyd that it was "sufficiently related to the purposes of the double jeopardy concept as to serve as a criterion for application of 'single act or transaction' for double jeopardy purposes as well." Boyd , 271 Or. at 567, 533 P.2d 795. Therefore, this court concluded, "[w]henever multiple charges are as interrelated as the test demands, the failure to join them in the first proceeding is inexcusable and therefore a subsequent attempt by the state to prosecute would constitute undue harassment." Id.
The second test is whether the charges arose out of a "single criminal episode," as that term is defined for the purposes of the double jeopardy statute, ORS 131.515, which provides, in part, "No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court." For the purposes of the double jeopardy statute, "criminal episode" is defined by ORS 131.505(4), which provides, " 'Criminal episode' means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."
The third test is for charges based on the possession of contraband. In Boyd , this court ruled that possession of multiple items of contraband at the same time and place constitutes a "single episode." Boyd , 271 Or. at 570-71, 533 P.2d 795. This **671 court explained that the Fitzgerald test was inapplicable in cases like the one before it, which involved charges for possession of stolen property and drugs, because the possession charges were not based on separate "relatable events," but rather a "single condition":
"The nature of the circumstances upon which criminal culpability rests in this situation-the *654 act or circumstances of possession-make it impossible to resolve the question by reference to the Fitzgerald test based upon the factual interrelation of the charges. The interrelationship deemed essential in Fitzgerald is lacking in the present case because the possession of the separate items of property do not constitute relatable events but rather a single condition characterized by the manner in which the items are held by the accused."
Id. at 570, 533 P.2d 795 (emphasis in original). This court further explained, "The criminal code treats the fact of possession as a criminal act of a continuing nature. In this statutory sense, the possession of the television set and the drugs, existing at the same place and time, constitute a single occurrence." Id. This court concluded, "Once unlawful possession of goods, without more, is recognized as criminal conduct, there is no reason for fragmenting the criminal conduct into as many parts as there are different items of property, however acquired." Id. at 570-71, 533 P.2d 795. Therefore, this court held:
"If a defendant is charged with the possession of drugs, some of which had been acquired at one time and the rest at another time, it would seem clear that he would be entitled to object to multiple prosecutions. There would be no reason other than harassment of the defendant for the state to divide the condition of possession into parts and prosecute separately on each . The case should not be treated any differently simply because the items of contraband happen to be different types. We hold, therefore, that the Court of Appeals properly treated this as a single episode."
Id. at 571, 533 P.2d 795 (emphasis added). Thus, under Boyd , the possession of multiple items of contraband, at the same time and place, constitutes a single criminal episode. That is because, if the possession of multiple items of contraband at the same time and place is not treated as a single criminal episode, **672 then the state could subject defendants to harassment through serial prosecutions.
E. Defendant's Convictions
Defendant argues that, under each of the three tests identified in Boyd , his conviction arose from a single criminal episode. His primary argument is that all his convictions were based on his possession of the computer files and, because he possessed the files at the same time and place, his possession constitutes a single criminal episode under Boyd .
Before addressing the merits of that argument, it is necessary to address the state's argument that it does not matter whether defendant possessed the files at the same time and place because the trial court could and did find that defendant was guilty of the ECSA I counts for duplicating the files by downloading them and that he had downloaded them during eight separate criminal episodes. The state acknowledges that it presented alternative theories regarding the actus reus of the ECSA I counts; it argued that the jury could convict defendant of those counts either on a theory that defendant duplicated the files by downloading them or on a theory that defendant possessed the files with the intent to duplicate them. The state also acknowledges that the jury's verdict does not reflect the theory on which the jury based its verdicts. Nevertheless, the state contends that the trial court could make its own finding at sentencing regarding the factual basis for defendant's guilt on the ECSA I counts.
That is incorrect. In a jury trial, it is the jury's role to determine what criminal conduct, if any, the defendant engaged in. See, e.g. , Or. Const., Art. I, § 11 ("In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *."); State v. Hoffman , 236 Or. 98, 107, 385 P.2d 741 (1963) ("[T]he words 'criminal prosecution,' as set forth in Article I, [s]ection 11[,] of our constitution, refer to establishing before a jury acts declared to be criminal by legislative action."). In sentencing defendant, the trial court could not make its own finding regarding the basis for defendant's guilt; that finding was within the **673 exclusive province of the jury. See State v. Quinn , 290 Or. 383, 405, 623 P.2d 630 (1981), overruled on other grounds by *655 State v. Hall , 339 Or. 7, 115 P.3d 908 (2005) (Under Article I, section 11, "the facts [used to enhance a defendant's sentence] which constitute the crime are for the jury and those which characterize the defendant are for the sentencing court."). Although the state may present alternative theories of a defendant's guilt to a jury, a trial court cannot impose a sentence that is contingent upon the jury having made a particular finding regarding the defendant's guilt if the record does not reflect that the jury actually made that finding. See State v. Wedge , 293 Or. 598, 600, 652 P.2d 773 (1982) (holding that the trial court's imposition of a firearm minimum sentence violated the defendant's Article I, section 11, jury right when, in finding the defendant guilty, the jury did not need to find that the defendant had personally used or threatened to use a firearm in the commission of his crimes).
In this case, as in any criminal case tried to a jury, it was the jury's role to determine whether the state carried its burden of proving the actus reus and mens rea of each charged crime. Thus, for each ECSA I count, it was the jury's role to determine whether the state proved beyond a reasonable doubt that defendant had duplicated the files, that defendant had possessed the files with the intent to duplicate them, or both. That was not the trial court's role. Once the jury issued its verdict, the trial court could determine whether defendant's criminal conduct-as found by the jury-constituted one or more criminal episodes. See Cuevas , 358 Or. at 168, 361 P.3d 581. But the trial court could not make its own finding about what defendant's conduct was. In order for the state to have the trial court sentence defendant based on a finding that defendant was guilty of the ECSA I counts for duplicating the files, the state needed to obtain that finding regarding the basis for defendant's guilt from the jury. It did not.[10]
**674 Therefore, we return to the merits of defendant's argument that, under Boyd , his convictions arose out of a single criminal episode because the state prosecuted him for his possession of the files at the same time and place. Because, as we have explained above, the term "criminal episode" has the same meaning in the criminal history context as in the double jeopardy context, we agree with that argument. It is clear that, under Boyd , the state could not have brought serial prosecutions against defendant in this case, each based on possession of a different computer file. For example, the state could not have brought a case against defendant for possession of one file, and then, after that case was resolved, have brought a second case based on possession of a second file at the same time and location, even if the second file was obtained at a different time. As in Boyd , "[t]here would be no reason other than harassment of the defendant for the state to divide the condition of possession into parts and prosecute separately on each." 271 Or. at 571, 533 P.2d 795. Therefore, the crimes would have to be joined in a single criminal prosecution. That is true, even if defendant acquired the files on different dates. Id. (stating that "[i]f a defendant is charged with the possession of drugs, some of which had been acquired at one time and the rest at another time, it would seem clear that he would be entitled to object to multiple prosecutions").[11] And, as explained, the drafters of the criminal history rule intended that, when a defendant was being sentenced for such crimes, a conviction for one would not increase the defendant's criminal history *656 score on the others. Therefore, the trial court could not increase defendant's criminal history score as it did.
The state argues that holding that defendant's possession of the computer files at the same time and location **675 constitutes a single criminal episode will result in unreasonable sentences. Specifically, the state argues,
"The necessary result of defendant's proffered rule is that a person who separately acquires unlawfully multiple items of contraband but then destroys or otherwise disposes of them is treated more harshly than a similar person who separately and unlawfully acquires the same multiple items of contraband and then chooses instead to continue to retain it all."
The result to which the state objects is the result of the drafters' importation of double jeopardy principles into the criminal history context. Application of those principles can result in defendants being treated differently. For example, a defendant who possesses multiple items of contraband at separate times and locations can be serially prosecuted, but a defendant who possesses multiple items of contraband at the same time and location cannot. Arguably, the first defendant is treated more harshly than the second. But the different treatment is not unreasonable; as this court explained in Boyd , joinder of the second defendant's crimes is necessary to protect against undue harassment. And, it was not unreasonable for the drafters of the criminal history score rule to conclude that, if crimes had to be joined in a single criminal proceeding, they would count as present crimes, not prior crimes, when calculating the defendant's criminal history score.
Certainly, the legislature could have used one test for determining whether crimes had to be joined for double jeopardy purposes and a different test for determining whether crimes could be used to increase a defendant's criminal history score, but it did not. As this court held in Bucholz , and affirmed in Cuevas , the drafters of the criminal history rule "distinguished between a single criminal episode , which they thought was not prior criminal history for use in sentencing on some other conviction from the same episode, and crimes from more than one episode ." Bucholz , 317 Or. at 317, 855 P.2d 1100 (emphases added). And, as explained above, "criminal episode" was a term used in the double jeopardy context, and the drafters used it in the same way: to identify crimes that would be before the court for sentencing in the **676 same criminal proceeding. And, they reasonably concluded that crimes that would be before the court in the same criminal proceeding should be treated as present crimes for sentencing purposes.
F. Harmlessness
Having concluded that the defendant's simultaneous possession of the computer files constitutes a single criminal episode, we turn to the state's final argument, which is that, even if the trial court erred in calculating defendant's criminal history, the error was harmless because the trial court "could and would impose the same total sentence on remand." See Or. Const., Art. VII (Amended), § 3 (stating that this court shall affirm a judgment, notwithstanding any error in the trial, if the court is of the opinion that the judgment "was such as should have been rendered in the case"); ORS 131.035 (providing that no error in a criminal proceeding "renders it invalid, unless it has prejudiced the defendant in respect to a substantial right"). Even assuming that the trial court could impose the same total prison term, we cannot conclude that the trial court's sentencing error was harmless. As described above, the trial court's error in calculating defendant's criminal history had a significant effect on defendant's presumptive sentences. It increased defendant's presumptive sentences rapidly and significantly; his presumptive sentence on Count 1 was 16-18 months, but by the time he was sentenced on Counts 4-15, it was 41-45 months. Given the effect the error would have had on the trial court's understanding of the maximum total sentence it could impose on defendant, it is far from certain that the error had no bearing on the trial court's determination of what sentence to impose. Thus, the record does not establish that, had the trial court properly calculated defendant's criminal history, it would have imposed the same total prison sentence.
*657 The decisions of the Court of Appeals and circuit court are reversed, and the case is remanded to the circuit court for resentencing.

Specifically, the indictment alleged that the crimes occurred on November 26, 2011 (Counts 1 and 16); January 1, 2012 (Counts 2 and 17); January 6, 2012 (Counts 3 and 18); January 20, 2012 (Counts 4 and 19); January 24, 2012 (Counts 5, 6, 7, 20, 21, and 22); January 30, 2012 (Counts 8, 9, 10, 23, 24, and 25); January 31, 2012 (Counts 11, 12, 13, 26, 27, and 28); and February 2, 2012 (Counts 14, 15, 29, and 30).

ORS 163.684 defines ECSA I, a Class B felony, as follows:
"(1) A person commits the crime of encouraging child sexual abuse in the first degree if the person:
"(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells a visual recording of sexually explicit conduct involving a child or knowingly possesses, accesses or views such a visual recording with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it; or
"(B) Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, a visual recording of sexually explicit conduct involving a child; and
"(b) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

Thus, defendant's prison terms were as follows: 18 months (Count 1); 28 months (Count 2); 40 months (Count 3); 45 months (Counts 4-15); and 16 months (Counts 16-30).

In full, OAR 213-004-0006(2) provides:
"An offender's criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime or crimes of conviction are sentenced. For crimes committed on or after November 1, 1989 a conviction is considered to have occurred upon the pronouncement of sentence in open court. For crimes committed prior to November 1, 1989 a conviction is considered to have occurred upon pronouncement in open court of a sentence, or upon the pronouncement in open court of the suspended imposition of a sentence. Prior adult convictions or juvenile adjudications which have been expunged shall not be considered when classifying an offender's criminal history. Prior findings of 'guilty except for insanity' shall not be considered when classifying an offender's criminal history."
Thus, not all a defendant's convictions or adjudications are included in the calculation of a defendant's criminal history score. Only convictions and adjudications for felony and Class A misdemeanor are included; convictions for Class B misdemeanors and Class C misdemeanors are not included.
The criminal history rule was originally adopted as former OAR 253-04-006 (Nov. 1, 1989). It was renumbered to OAR 213-004-0006 in 1996.

To provide background for the discussion of the legislative history of the criminal history rule, we note that, as originally proposed by the Oregon Criminal Justice Council and approved by the Sentencing Guidelines Board, the rule provided, in pertinent part, that a defendant's criminal history was based on "the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime was committed ." See Or. Laws 1989, ch. 790, § 98 (setting out the legislative amendments to the text of the original rule) (emphasis added); see also Guidelines Implementation Manual 50 (describing original rule). When the legislature reviewed the sentencing guidelines in connection with the bill intended to implement them, Senate Bill (S.B.) 1073 (1989), Representative Kelly Clark proposed that the criminal history rule be amended so that a defendant's criminal history would be based on the defendant's criminal history at the time the current crime or crimes were sentenced . Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, S.B. 1073, June 20, 1989, Tape 103, Side A (statement of Rep. Kelly Clark). The amendment was approved by the House. Senate and House Journal, Regular Session, S.B. 1073, S-216 (1989).
In addition to the amendment of the criminal history rule, the House subcommittee made other amendments to S.B. 1073-which was one of the last bills of the legislative session-before passing it, including the insertion of the substance of ten other bills that had not been heard by the House Judiciary Committee yet. Minutes, House Committee on Judiciary, Subcommittee on Crime and Corrections, S.B. 1073, June 20, 1989, 12. The House approved S.B. 1073 as amended, but the Senate did not concur in all of the House's amendments. Senate and House Journal, Regular Session, S.B. 1073, S-216 (1989). As a result, the Senate inserted the guidelines provisions of S.B. 1073, including the provisions relating to the criminal history rule, as amended by the House, into a different bill, House Bill (H.B.) 2250 (1989), which had already been approved by the House. Minutes, Senate Committee on Judiciary, H.B. 2250, June 29, 1989, 3-5. H.B. 2250 proceeded to a conference committee, in which it was repeatedly explained that the provisions relating to the criminal history rule were the product of the House's amendments and were identical to the provisions that the House approved in S.B. 1073. Tape Recording, Joint Conference Committee, H.B. 2250, July 1, 1989, Tape 1, Side A (statement of Sen. Joyce Cohen that the Senate did not change the House language for the criminal history score amendments); id. at Tape 1, Side B (statement of Rep. Tom Mason that he did not believe that there was any difference between the criminal history score amendments in S.B. 1073 and those in H.B. 2250). The legislature passed H.B. 2250, giving effect to the sentencing guidelines. Senate and House Journal, Regular Session, H.B. 2250, H-55 (1989); Or. Laws 1989, ch. 790, § 90 ("The rules of the State Sentencing Guidelines Board, as adopted pursuant to chapter 619, Oregon Laws 1987, and chapter 151, Oregon Laws 1989 (Enrolled Senate Bill 632), become effective on November 1, 1989."). Therefore, the legislative history of the criminal history rule includes the history of both S.B. 1073 and H.B. 2250.

The drafters' agreement with Ellis's statement was consistent with their desire to ensure that sentences imposed under the guidelines did not exceed the state's correctional resources. When the drafters were discussing the rule, a staff member of the Criminal Justice Council informed them that, if a defendant had "multiple current offenses" and each offense increased the defendant's criminal history score for the remaining offenses, that would increase the correctional resources required to implement the guidelines. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, June 20, 1989, Tape 103, Side A (statement of Kathryn Ashford). One of the drafters characterized the projected increase as "substantial," id . (statement of Rep. Tom Mason), and all the drafters, in agreeing with Ellis, appear to have intended to avoid such an increase.

The commentary further explains, "[A] 'conviction' or 'juvenile adjudication' should be considered to have occurred upon the pronouncement of sentence in open court. This is a convention established only to provide continuity in the application of these rules with respect to convictions from other proceedings against the offender." Guidelines Implementation Manual 51 (emphasis added). Thus, although the commentary states that a conviction is considered to have occurred upon the pronouncement of sentence in open court, the purpose of that statement-which was later inserted into the criminal history rule itself, former OAR 253-04-006 (Nov. 1, 1993)-is to establish the criteria for using a conviction from another proceeding in the calculation of a defendant's criminal history score. It was necessary because, as the Council members discussed, under Oregon law, there were many definitions of "conviction." Minutes, Oregon Criminal Justice Council, Sept. 18, 1989, 9-10. For example, a conviction could be deemed to have occurred upon pronouncement of sentence or upon entry of a sentencing order. Id. Thus, it was important to identify at what point in another proceeding a conviction occurred.

ORS 132.560 (1987), which governed permissive joinder, provided:
"The indictment must charge but one crime, and in one form only, except that:
"(1) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.
"(2) When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

Prior to the session, the only charges that could be joined under ORS 132.560 were those that were "for the same act or transaction." ORS 132.560 (1987), amended by Or. Laws 1989, ch. 842, § 1. During the session, the legislature amended that statute to also allow for joinder of charges "of the same or similar character" and charges "connected together or constituting parts of a common scheme or plan." Or. Laws 1989, ch. 842, § 1.

In most cases, the jury's finding regarding the actus reus of each crime will be apparent from the charging instrument, jury instructions, and jury verdict form. In cases like this one, where the state proceeds on alternative theories regarding an element of the crime, a special verdict form can be submitted to the jury to obtain findings regarding each of the theories.

Boyd 's holding was dependent on the fact that the state prosecuted the defendant for possession of the stolen television and drugs. As this court observed,
"Had defendant been charged with the actual theft of the television set on one occasion and the illegal purchase of drugs at another time, it would be clear enough that the events would be unrelated and therefore obviously not unitary. But the state did not charge defendant with the acts which eventually culminated in defendant's possession of the television set and the drugs. The charge is a single charge of illegal possession of goods at one time and place."
Boyd , 271 Or. at 570, 533 P.2d 795.