STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHARLES RAY PUGH,
*Defendant-Appellant.*

Clatsop County Circuit Court
081191; A148574

297 P3d 27

Megan McVicar argued the cause for appellant. On the brief were Whitney P. Boise and Hoevet, Boise & Olson, P.C.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant was convicted on 18 counts of first-degree encouraging child sexual abuse, ORS 163.684 (2001).[1] He appeals the trial court's denial of his motions for a judgment of acquittal based on the state's failure to prove that he knowingly duplicated an image of sexually explicit conduct involving a child and the state's failure to prove venue. For the reasons explained below, we affirm.

In reviewing a denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). After receiving a tip from the United States Postal Service, special agents Hicks and Persons traveled to defendant's home in Clatsop County[2] in 2007 to interview him about his Internet activities. When the special agents entered defendant's home, they noticed that defendant's desktop computer was hooked up to a monitor in the middle of the living room and was connected to the Internet through a dial-up connection. During the interview, defendant revealed that "viewing pornography was something he did often[,]" and that "he had seen child pornography on the Internet," but "he did not actively seek out child porn." He adamantly denied any interest in or possession of child pornography. Defendant consented to the special agents taking and searching his home computer.

During the forensic examination of defendant's computer, Hicks identified 58 images that he believed to be child pornography, 18 of which were used to charge defendant with first-degree encouraging child sexual abuse,

---

[1] The legislature recently amended encouraging child sexual abuse in the first degree, ORS 163.684, and second degree, ORS 163.686. Or Laws 2011, ch 515, §§ 3, 4. Because those amendments are inapplicable, Or Laws 2011, ch 515, § 11, all references to ORS 163.684 and ORS 163.686 in this opinion refer to the 2001 version of the statutes that were in effect when defendant committed the offenses.

[2] Persons testified that special agents used a third-party public records report indicating that defendant possibly had a Multnomah County residence during this time period. Persons stated that the residence was listed under the "nonverified" section of the report. Special agents conducted a background check with records from the postal service and the DMV that indicated that defendant lived in Clatsop County during the years in question.

ORS 163.684. At trial, Hicks and Persons testified to the facts recounted above. The state introduced evidence that defendant downloaded the images onto his computer by saving images he saw over the Internet into specific folders on the hard drive in his computer. For example, some of the images were located in folders labeled "Young," "Underage Home main page_files," and "Young Models Photos, Videos." The state also produced evidence that the images were downloaded between 2002 and 2005, that defendant lived in the same home in Clatsop County for at least 10 years, and that he worked for the same company in Clatsop County for almost 27 years.

Persons explained that downloading an image is similar to physically copying the image with a copying machine.

"You can go on—you can save a copy of that picture or of that document to your computer, which is no different than if you took that picture, went to a copy machine, copied it, and now you have two copies.

"So when you're downloading, I may see a picture of this TV stand that I like, and I download that picture to my computer desktop so I can save that. But the picture of that computer TV stand still resides out in the Internet for the next person to come and copy and for the next person to come and copy."

Hicks supported Persons's explanation of downloading. During his testimony, he stated that saving an image obtained from the Internet is like duplicating a photograph "because the image on the Internet still exists, and still is being duplicated over and over and over throughout the world." He also testified that, if someone has saved a photograph of a child being sexually abused in a folder on a computer, that is an action "you have to make happen."

After the state rested its case, defendant moved for a judgment of acquittal on two grounds: insufficiency of evidence and venue. Concerning the insufficiency of evidence, defendant argued that the state failed to prove that he "duplicated" images depicting the sexual abuse of children as the indictment required. Rather, defendant asserted that the state proved that he "downloaded" images

and "downloading is neither production nor distribution." As to venue, defendant argued that the state failed to prove that he downloaded the images in Clatsop County. Although there was evidence that defendant worked and lived in Clatsop County, defendant contends that there is no correlation between the location of his home and work and the site of his criminal activities. Defendant relied on testimony from Persons stating that, before interviewing defendant in Clatsop County, the special agents obtained a report indicating that defendant may have had another address during this time period in Multnomah County. The trial court denied the motions and the jury returned guilty verdicts on 18 counts of first-degree encouraging child sexual abuse.

On appeal, defendant renews his arguments that the state failed to prove that he "duplicated" child pornography and that the crime occurred in Clatsop County. He also assigns error to the trial court's nonunanimous jury instruction, which we reject without discussion. *State v. Cobb*, 224 Or App 594, 596-97, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009).

We begin with defendant's first assignment of error, whether "downloading" is "duplicating" for purposes of ORS 163.684. When interpreting a statute, our task is to discern the legislature's intent in enacting the law. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). To do so, we first look at the text of the statute in context, as well as any helpful legislative history. *Id*. The issue in this case is a narrow one, namely, whether the term "duplicates" in ORS 163.684 includes downloading images from the Internet and saving them onto a personal computer. That statute provides, in part:

"(1)  A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A)  Knowingly develops, *duplicates*, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells *any photograph, motion picture, video tape or other visual recording of sexually explicit conduct involving a child* or possesses such matter with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it[.]"

ORS 163.684 (emphasis added). In this case, the state must prove that defendant (1) duplicated a photograph or other visual recording of sexually explicit conduct involving a child, and (2) he knew that the image contained sexually explicit conduct involving a child.

Defendant relies on the statutory scheme for child pornography offenses to argue that the evidence was insufficient to convict him of first-degree encouraging child sexual abuse. The statutory scheme punishes most harshly the creation of child pornography, followed by distribution, then its use to promote further sexual abuse of children, and finally, general possession. *State v. Porter*, 241 Or App 26, 34, 249 P3d 139, *rev den*, 350 Or 530 (2011). First-degree encouraging child sexual abuse punishes creation and distribution of child pornography, ORS 163.684, and second-degree encouraging child sexual abuse punishes general possession, ORS 163.686.[3] In defendant's view, downloading child pornography is neither production nor distribution and, without evidence that he intended to distribute it, the evidence was insufficient to prove he committed the first-degree offense. At most, he asserts, the state's evidence can only prove that he knowingly possessed child pornography in violation of second-degree encouraging child sexual abuse. ORS 163.686; *see State v. Barger*, 349 Or 553, 562, 247 P3d 309, *adh'd to as modified on recons*, 350 Or 233, 253 P3d 1030 (2011) (holding that to "possess[] or control[]" an image depicting child pornography within the meaning of ORS 163.686 requires something more than viewing the images on a computer); *see also State v. Ritchie*, 349 Or 572, 582-83, 248 P3d 405 (2011) (same).

To support his argument that the state proved only that he downloaded images depicting child pornography, as opposed to acts of duplication, defendant contends that downloading is the process by which a person obtains

---

[3] ORS 163.686 provides, in part:

  "(1) A person commits the crime of encouraging child sexual abuse in the second degree if the person:

  "(a)(A)(i) Knowingly possesses or controls any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person[.]"

possession or control of an image offered on the Internet by another computer user and is the tangible equivalent of a consumer ordering a photograph from a mail-order catalogue. According to defendant, duplication does not occur until after the computer user downloads the file and e-mails a copy to another person, uploads a copy to the Internet, prints the image, or copies it onto a CD or DVD. *See, e.g., State v. Dimock*, 174 Or App 500, 27 P3d 1048 (2001), *rev den*, 334 Or 190 (2002) (e-mailing child pornography); *see also, e.g., State v. Betnar*, 214 Or App 416, 166 P3d 554 (2007) (printing images and copying them onto a CD). And because there was no evidence that he copied, e-mailed, or printed the images that he downloaded, he concludes that the trial court improperly denied his motion for judgment of acquittal.

We are not persuaded by defendant's argument that he neither created nor distributed child pornography in violation of ORS 163.684. The Supreme Court in *State v. Bray*, 342 Or 711, 718, 160 P3d 983 (2007), explained that ORS 163.684 prohibits two categories of offenses, production and distribution:

> "Logically, those acts divide into two categories: producing child pornography and distributing it. That is, the statute prohibits financing, attempting to finance, developing, or *duplicating* child pornography—acts that go to the production of child pornography. It also prohibits disseminating, exchanging, and selling child pornography—acts that involve distributing child pornography to others. Because the statute uses the word 'or' to connect the series of prohibited acts, a person will violate the statute if he or she commits only one of those acts. For instance, a person will violate the statute if he or she knowingly develops a negative containing child pornography but does not disseminate or exchange it. *Put differently, the crime is complete when the person knowingly develops the negative without regard to whether the developed picture is later disseminated, sold, or exchanged.*"

(Emphasis added.) As the highlighted text demonstrates, duplication is a form of production. The offense is complete once a person knowingly copies the image without disseminating or distributing it. Thus, defendant violated ORS 163.684 if downloading is an act of duplication.

We recently addressed the question of whether a person "duplicates" child pornography within the meaning of ORS 163.684 when that person downloads images onto his computer, albeit, in the context of whether the issue was beyond dispute in a plain error analysis. In *State v. Urbina*, 249 Or App 267, 270, 278 P3d 33, *rev den*, 353 Or 103 (2012), the defendant conceded that he did not preserve his argument that downloading is not the same as duplicating for purposes of ORS 163.684. Nonetheless, he urged us to review it as plain error because his argument was beyond dispute—a prerequisite to plain error review. The defendant analogized downloading images from a peer-to-peer network to picking up a magazine and viewing the images inside of it, whereas "duplication" refers to producing and distributing the pornography. *Id.* at 271. We rejected the contention that the issue was beyond dispute, stating that

> "downloading a file from a peer-to-peer network is not like simply picking up a magazine. Rather, there is evidence in this record that, when defendant double-clicked on the file names that resulted from his queries, he requested and received digital copies of videos that were present on other computers in the peer-to-peer file-sharing network. That is, after he downloaded the videos, he had his *own copies* of them, which he could then display on his own computer whenever he wanted, or could share with others. That type of a file download from a peer-to-peer network is, at least arguably, more than 'viewing' and instead constitutes 'duplication' within the ordinary meaning of the term. *See Webster's Third New Int'l Dictionary* 702 (unabridged ed 2002) (defining 'duplicate' as 'to make double or twofold' and 'to be or make a duplicate, copy, or transcript of'). Furthermore, there is a credible argument that downloading a video to a personal computer, which can then be viewed independently of the original video or shared with others in the peer-to-peer network, is precisely the type of proliferation of child pornography that the legislature intended to combat in ORS 163.684."

*Urbina*, 249 Or App at 271 (emphasis in original). We observed that the evidence in that case arguably suggested that downloading a file made available on a peer-to-peer network and saving it onto a personal computer is similar to duplicating that file, because the downloader has made his

own personal copy and the original is available for another person to duplicate. We see no difference between creating a personal copy of child pornography through downloading from a peer-to-peer network and downloading from other independent sources on the Internet. In both situations, the original image remains with the original owner, and a copy is saved onto the downloading party's computer.

The legislative history reinforces the credible argument in *Urbina* that downloading a video to a personal computer is the type of proliferation of child pornography that the legislature intended to prohibit when it enacted ORS 163.684. In a hearing before the house judiciary committee, Representative Naito expressed concern about the phrase "knowingly develops or duplicates."

> "In section 2 of the bill, I guess I'm a little concerned about some of the—a person who might—it says knowingly develops or duplicates. If somebody drops off some film somewhere and then the person knowingly duplicates— they don't know * * * the contents in it—how would that be handled? Somebody might just have a business that they develop it and don't really realize what's in it."

Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law and Judicial Administration, HB 2692, Feb 23, 1995, Tape 28, Side A (statement of Rep Lisa Naito). Keith Meisenheimer, then a senior deputy district attorney for Multnomah County who testified in support of the bill, explained that the conduct would be criminal if the state proved that the person developing the film knew that the contents of the film contained child pornography and duplicated the film anyway. *Id.* (statement of Keith Meisenheimer, Deputy District Attorney for Multnomah County). Thus, in Representative Naito's hypothetical scenario, the owner of film containing pornographic images of children allows a film developer to develop the film and to print photographs. Then, the owner would retain the negatives of the images, and the developer would be guilty of duplicating the images if the developer knew that the film contained child pornography.

The film developer is analogous to a computer user downloading files from the Internet. When a computer user

downloads images depicting child pornography, the original owner allows the computer user to duplicate the images onto the user's computer, and keeps the original images on the original owner's Internet server. In both scenarios, the original owner retains the originals while the developer/downloader creates another set of images. The developer/downloader would be liable if that person knew that the contents of the original image contained child pornography but chose to create another set of images anyway.

In this case, there was sufficient evidence for a reasonable factfinder to find beyond a reasonable doubt that defendant "duplicated" the images when he downloaded them. Persons explained that "downloading" an image is similar to making a photocopy of that image and keeping it on your computer because the original image is still on the Internet available for another person to copy. Hicks concurred and stated that "the image on the Internet still exists, and still is being duplicated over and over and over and over throughout the world." In addition, there was sufficient evidence to find that defendant knew that the images he downloaded contained child pornography. Defendant saved the images in electronic folders he had created and labeled, such as "Underage Home main page_files," "Young," and "Young Models Photos, Videos." In case it was not obvious to jurors, Hicks explained that doing so was not accidental; it required deliberate action. Based on that evidence, the jury could infer that defendant "knowingly duplicated" child pornography under ORS 163.684 by downloading and saving the images onto his computer, knowing that the images contained child pornography.[4] *See, e.g., State v. Reeves*, 250 Or App 294, 304, 280 P3d 994, *rev den*, 352 Or 565 (2012) (concluding that a reasonable factfinder could find, beyond a reasonable doubt, that when the defendant downloaded numerous files, including some with explicit titles, such as "8yo," "kiddy," "pedo," "kdquality," and "childlover," he knowingly downloaded sexually explicit visual recordings

---

[4] Thus, this is not a situation where defendant unknowingly downloaded files onto his computer from viewing a website that contained child pornography. *Cf. Barger*, 349 Or at 557-58 (despite evidence that the defendant viewed child pornography over the Internet, there was no evidence that the defendant knew or understood that the files were downloaded into a temporary Internet file cache); *Ritchie*, 349 Or at 579 (same).

involving child abuse). Accordingly, we conclude that the trial court properly denied defendant's motion for judgment of acquittal for insufficiency of evidence.

In his second assignment of error, defendant contends that the state failed to prove venue because the state failed to establish that he downloaded the 18 images at issue while he was in Clatsop County. Venue is proper in the county where the defendant engaged in conduct that constitutes the offense. ORS 131.305(1) ("[C]riminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred."). In this case, venue is proper wherever defendant "duplicated" the images. "Venue is not an element of an offense, but it is a material allegation that the state must prove beyond a reasonable doubt." *State v. Macnab*, 222 Or App 332, 335, 194 P3d 164 (2008). To determine whether the state met its burden to prove venue, we view the evidence, including all reasonable inferences, in the light most favorable to the state to determine whether a reasonable factfinder could infer beyond a reasonable doubt that the crime occurred in the alleged county. *Id.* Venue may be established by inference through circumstantial evidence, but mere speculation is insufficient. *Id.*

Defendant relies on two cases to support his contention that the state failed to prove venue. In the first case, *State v. Panek*, 141 Or App 22, 917 P2d 500 (1996), the defendant was charged with fraudulently filing a workers' compensation claim in Portland. His active criminal conduct consisted of filing the falsified claim form and communicating with the insurer's employees thereafter, but there was no evidence of where the defendant prepared and filed his claim form or where the insurer's employees who spoke with the defendant were located. *Id.* at 26. We rejected the state's venue argument that a factfinder could infer that the defendant filed his fraudulent claim in Portland because there was some evidence that he worked, lived, and was hospitalized in Portland. *Id.* at 27. We stated that there was no evidence of a correlation between the location of the defendant's home, work, or place of hospitalization and the site of his criminal activity from which an inference of venue in Portland would be permissible. *Id.* at 28; *see also*

*Macnab*, 222 Or App at 336 (concluding that the state failed to establish venue despite evidence that the defendant lived in the county in question an entire year before and two years after the offense). In this case, in defendant's view, the state only established that he lived and worked in Clatsop County during the period when he downloaded the images, but it failed to show that he actually downloaded the images in Clatsop County.

The second case defendant relies upon, *State v. Ritchie*, 228 Or App 412, 208 P3d 981 (2009), *rev'd in part on other grounds*, 349 Or 572, 248 P3d 405 (2011), involves facts similar to those in this case. The defendant was charged with 10 counts of first-degree encouraging child sexual abuse based on images found on his laptop computer. He challenged the sufficiency of evidence to establish venue. We stated that we could not infer that the defendant engaged in criminal conduct in Clackamas County merely from evidence that he lived and worked there. *Id.* at 421. We reasoned that the laptop computer was mobile and the defendant generally carried his laptop computer wherever he went and, although it was likely that he downloaded the images at his home, that the state failed to establish beyond a reasonable doubt that he did so. *Id.* at 421-22.

Defendant's reliance on the two cases is misplaced. The criminal activity in *Ritchie* was highly mobile and could have occurred in any county. In *Panek*, the criminal activity could have occurred in multiple counties, and the state failed to tie the evidence showing that the defendant resided, worked, and received medical care in Multnomah County to the location of his filing. Unlike filing a fraudulent claim form in *Panek* or viewing images over the Internet on a laptop computer in *Ritchie*, downloading images onto a desktop computer is not easily accomplished in multiple locations.

Here, the state adduced evidence tying defendant's computer usage to his residence in Clatsop County. Defendant's computer was hooked up to a monitor in the middle of his living room and was connected to the Internet through a dial-up connection. Thus, defendant did not have access to a wireless Internet connection, but instead had to connect to a

telephone line to connect to the Internet. In addition, Persons testified that the 18 images at issue were downloaded over a number of different years rather than all at once. Defendant lived at his home in Clatsop County, where the computer was located, for the past 10 years. A rational factfinder could have found beyond a reasonable doubt that defendant did not carry his computer to another county, plug it into a monitor, connect it to a telephone line, and download child pornography on multiple occasions between 2002 and 2005 and, instead, downloaded the child pornography in his home in Clatsop County. As a result, the state established venue and defendant's motion for judgment of acquittal based on venue was properly denied.

Affirmed.