Argued and submitted June 21, 2022, affirmed February 8, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMIE DEANN DENT,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR63119; A173987

525 P3d 487

Defendant appeals from a judgment of conviction for 11 counts of mail theft, ORS 164.162, and one count of aggravated identity theft, ORS 165.803. She argues that the trial court erred in denying her motion to suppress evidence found in a search of her house, and that the court erred when it concluded that Counts 1 to 9 constituted separate criminal episodes for the purpose of calculating her criminal history score. *Held*: The trial court did not err. The Court of Appeals concluded that the affidavit in support of a warrant to search defendant's house, along with the officer's training and experience, were enough to support a finding of probable cause. The court then analyzed whether defendant's charges constituted separate criminal episodes under the cross-related and single criminal objective tests. As to the cross-related test, the court concluded that because a complete recounting of each individual theft charge could be made without reference to any of the other charged thefts, the charges were not cross-related. As to the single criminal objective test, the court concluded that, objectively viewed, the charged offenses were not continuous and uninterrupted as measured by time, place, and circumstances. Thus, the charged offenses were not part of the same criminal episode.

Affirmed.

David F. Rees, Judge.

Sara F. Weboff, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for 11 counts of mail theft, ORS 164.162, and one count of aggravated identity theft, ORS 165.803. She raises three assignments of error. In her first assignment, defendant argues that the trial court erred in denying her motion to suppress evidence found in a search of her house. In her second assignment, defendant argues that the court erred when it found that Counts 1 to 9 constituted separate criminal episodes for the purpose of calculating her criminal history score. In her third assignment, defendant argues that the court erred in instructing the jury that it could return nonunanimous verdicts. For the reasons explained below we reject each of defendant's assignments of error. Accordingly, we affirm.

## I.   FACTS

The facts are not in dispute. Between December 13, 2016, and September 20, 2018, defendant, a "rural carrier associate" for the United States Postal Service (USPS), stole mail and packages containing cash, money orders, checks, and other forms of payment from various residential and commercial addresses along her route. Deputy Lerch, of the Multnomah County Sheriff's Office, and Inspector Brown, of the USPS Office of the Inspector General, began an investigation and identified defendant as the suspect in the thefts. Lerch's affidavit in support of a warrant to search defendant's house included information indicating that cash, deposits, and packages worth over $40,000 were missing from mail originating from or addressed to individuals and businesses along defendant's route, that defendant's work schedule aligned with the dates and times the mail went missing, and that, in some cases, defendant had scanned the missing packages and mail. Lerch also stated,

> "I know from my training and experience that people who commit crimes of * * * Mail Theft often store items of evidence and fruits of their crimes * * * in their residences[.] I know they will also have receipts and other ledgers documenting their deposits of stolen cash into bank accounts."

Based on Lerch's affidavit, a search warrant was issued for defendant's house. The search uncovered numerous individual

pieces of opened and unopened mail, a bag of mail, cash, checks, money orders, and a contract with the proprietor of a horse training and boarding facility for the care of defendant's horses. Defendant was arrested, and police searched her personal effects where they found an opened letter containing another person's social security card.

## II.   NONUNANIMOUS JURY INSTRUCTION

Defendant was convicted by a unanimous jury. Therefore, her third assignment of error is foreclosed by *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020) (holding that a nonunanimous jury instruction is not a structural error that requires retrial when the jury convicts the defendant unanimously).

## III.   MOTION TO SUPPRESS

In defendant's first assignment of error, she argues that the trial court erred when it denied her motion to suppress the evidence discovered in her house. Specifically, she argues that Lerch's affidavit did not contain enough objective factual information to allow a reasonable magistrate to conclude that there was a nexus between the suspected criminal activity and defendant's house. According to defendant, in such a circumstance, an officer's training and experience is insufficient to justify the search. The state responds that the affidavit contained a wealth of information provided by Brown and that those facts can count in the magistrate's probable cause calculus even when not accompanied by "more than the bare assertion of training and experience." *State v. Daniels*, 234 Or App 533, 542, 228 P3d 695, *rev den*, 349 Or 171 (2010). We agree with the state.

When reviewing a challenge to the sufficiency of an affidavit supporting a magistrate's issuance of a warrant, this court asks "(1) whether there is reason to believe that the facts stated are true, and (2) whether the facts and circumstances disclosed by the affidavit, if true, are sufficient to establish probable cause to justify the search requested." *State v. Goodman*, 328 Or 318, 325, 975 P2d 458 (1999). Probable cause exists when the facts in the affidavit, along with reasonable inferences, permit the magistrate to

determine that seizable evidence will probably be found in the location to be searched. *State v. Cannon*, 299 Or App 616, 626, 450 P3d 567 (2019). A magistrate may also "rely on [their] own common sense" in interpreting facts and inferences to reach a probable cause determination. *State v. Henderson*, 341 Or 219, 225, 142 P3d 58 (2006).

Defendant argues that, because cash is common and fungible, it was not common sense for a magistrate to infer that cash, deposit slips, or other evidence of the mail thefts would be found at her house. But the correct inquiry is not whether the property in question was fungible, or whether there is "another plausible way of thinking about" the property, but rather "whether the information in the affidavit supported the conclusion that the [stolen property] 'probably' would be found in the location to be searched." *Id.* at 225 n 5. Having reviewed the affidavit, we conclude that the information contained therein, along with Lerch's training and experience, was enough to allow a reasonable magistrate, exercising common sense, to conclude that evidence of the mail thefts would probably be found in defendant's house.

## IV. SINGLE CRIMINAL EPISODE

Defendant was charged with nine counts of mail theft under a taking theory (Counts 1 to 9), two counts of mail theft under a secreting theory (Counts 10 to 11), and one count of aggravated identity theft (Count 12). The state based each taking theft on an individual piece of post-marked mail. It based the secreting thefts on the bag of non-postmarked mail found in defendant's closet. Specifically, it based one count on the "business mail" from the bag of mail and the other count on the "personal mail" from the bag of mail. Count 12, the identity theft, was based on defendant having 10 or more pieces of another person's identity in her possession as evidenced by checks, money orders, and other identifying information found in the bag of mail, in defendant's closet, in her dresser, and in her purse.

At sentencing, the state argued that Counts 1 to 9 constituted separate criminal episodes from Counts 10 to 12 for the purposes of sentencing under ORS 137.717, the

repeat property offender statute.[1] Defendant remonstrated that all the charges constituted the same criminal episode and thus that she was not eligible for sentencing under ORS 137.717. The trial court agreed with the state and sentenced defendant accordingly.

"When a court imposes sentences for multiple convictions in a single proceeding, the court may use a defendant's convictions arising from earlier criminal episodes to calculate the defendant's criminal history score with respect to *** a later criminal episode." *State v. Witherspoon*, 250 Or App 316, 321, 280 P3d 1004 (2012). "Whether conduct giving rise to convictions constitutes a single criminal episode is a question of law, although the answer to that question 'may depend on predicate findings of historical fact.'" *State v. Nesbit*, 274 Or App 694, 696, 361 P3d 649 (2015) (quoting *State v. Potter*, 236 Or App 74, 82, 234 P3d 1073 (2010)).

In *State v. Dulfu*, 363 Or 647, 669, 426 P3d 641 (2018), the Oregon Supreme Court concluded that the term "criminal episode" has the same meaning in the criminal history context as it does in the double jeopardy context. There are "three alternative tests for determining when a prosecution for one charge will bar a later prosecution for another charge." *Id.* at 669-70.

"The first test is whether the charges arose out of the 'same act or transaction,' *** for the purposes of permissive joinder under ORS 132.560. [T]wo charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge. That test is referred to as the 'cross-related' test, and, *** [it serves] as a criterion for application of 'single act or transaction' for double jeopardy purposes as well[.] ***

"The second test is whether the charges arose out of a 'single criminal episode,' as that term is defined for the purposes of the double jeopardy statute, ORS 131.515, which provides, in part, 'No person shall be separately prosecuted for two or more offenses based upon the same criminal

---

[1] The state conceded that Counts 10 to 12 were part of the same criminal episode.

episode ***[.]' For the purposes of the double jeopardy stat-
ute, 'criminal episode' is defined by ORS 131.505(4), which
provides, "'Criminal episode' means continuous and unin-
terrupted conduct that establishes at least one offense and
is so joined in time, place and circumstances that such con-
duct is directed to the accomplishment of a single criminal
objective."

*Id.* (citations omitted).[2] For clarity, we refer to the first test
as the "cross-related" test and to the second test as the "sin-
gle criminal objective" test.

A. *Cross-Related Test*

Charges are cross-related if they "arise out of the
same act or transaction." *Id.* "[T]wo charges arise out of
the same act or transaction if they are so closely linked
in time, place and circumstance that a complete account
of one charge cannot be related without relating details of
the other charge." *Id.* We have interpreted that language to
mean that "[i]f a complete account of each crime necessarily
includes details of the other, then they arise from the same
criminal episode. Crimes are not cross-related, and thus do
not necessarily include details of one another, where one
of the crimes may be proved without evidence of the other
crime." *Witherspoon*, 250 Or App at 322.

Defendant argues that this case is like *Nesbit*. In
that case, the defendant filed a single false claim for benefits
and then received multiple checks based on that false claim.
We held that the charged theft offenses constituted a single
criminal episode because "a complete account of why [the]
defendant committed theft each time he deposited one of the
insurance checks *** would *necessarily* include the detail
that [the bank] issued the check pursuant to [the] defen-
dant's initial false claim for benefits." 274 Or App at 699
(emphasis in *Nesbit*). The state responds that the facts of
this case are more like those in *State v. Spynu*, 278 Or App
250, 253, 372 P3d 622 (2016). In that case, the defendant
filed multiple fraudulent vouchers with the Department of
Human Services and was charged with 10 counts of theft.

---

[2] The *Dulfu* court also articulated a third test, commonly referred to as the
"simultaneous possession" test and applied that test to the facts before it. That
test is not at issue in this case.

We held that the charges constituted multiple criminal episodes because "each theft resulted from [the] defendant's act of submitting distinct false vouchers at distinct times and accepting distinct payments and benefits on those vouchers." *Id*.

This case presents a scenario closer to *Spynu* than to *Nesbit*. In *Nesbit*, each of the theft charges related back to one act.[3] By contrast, here, like in *Spynu*, each of defendant's acts of taking the mail in Counts 1 to 9 stood alone. None of the taking thefts alleged in Counts 1 to 9 related back to each other, or to any other charged offense, as was the case in *Nesbit*. To be sure, the state used some of the evidence from Counts 10 to 12 to support its case on Counts 1 to 9. However, overlapping evidence for the charged offenses does not necessarily mean that the charges are cross-related. We recognized that in *Spynu*, when we noted that, "given the repetitive nature of defendant's crimes, * * * if the thefts had been tried separately, the separate trials undoubtably would have involved some overlapping evidence. Nevertheless, a 'complete account' of any single one of the theft charges could be related without relating details of the other." *Spynu*, 278 Or App at 253.

*Spynu* thus stands for the proposition that under the cross-related test, two charges are not necessarily cross-related if some overlapping evidence links them, so long as each charge can be related without relating the details of the other charge. Such is the case here. As the trial court correctly surmised, had the state opted to prosecute each taking theft separately, each piece of postmarked mail would have been enough to prove the elements of mail theft by taking. As such, even without the evidence from Counts 10 to 12, a complete recounting of each individual theft charge could be made by relying solely on each piece of postmarked mail without reference to any of the other charged thefts. The charges were thus not cross-related.

---

[3] Although each of the thefts in *Nesbit* related back to the underlying act of filing a false report, the state opted not to charge the defendant for that offense. Instead, the defendant was charged with three counts of aggravated theft in the first degree. Defendant cites no authority, nor could we find one, which states that, for the purpose of the cross-related test, the underlying act or transaction must be charged to link the charged offenses such that they are cross-related.

B.   *Single Criminal Objective Test*

As noted above, the single criminal objective test borrows language from Oregon's double jeopardy statute and defines criminal episode as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." *Dulfu*, 363 Or at 670; ORS 131.505(4). Whether a defendant's conduct is directed to the accomplishment of a single criminal objective is an "objective determination." *State v. Burns*, 259 Or App 410, 422, 314 P3d 288 (2013) (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 26, 17 (Nov 1972) (Commission Commentary)). "[T]he subjective intent of the person should not be considered in determining whether or not a certain offense was part of the criminal episode." Commission Commentary § 26 at 17. "Instead, the determination depends on 'what reasonably appeared under the circumstances to be within a single criminal objective.'" *State v. Tooley*, 265 Or App 30, 39, 333 P3d 348, *rev den*, 356 Or 575 (2014) (quoting Commission Commentary § 26 at 17).

"We defer to the trial court's explicit and implicit findings of fact if there is evidence to support them and review its application of the law to those facts for legal error." *State v. Martin*, 322 Or App 266, 268, 519 P3d 132, *rev den*, 370 Or 694 (2022). "'The state bears the burden of proving by a preponderance of evidence' that each offense was a separate criminal episode." *Id.* (quoting *Nesbit*, 274 Or App at 695).

As an initial matter, we reject the state's argument that because defendant chose to commit the same crime against multiple people multiple times, each act constituted a separate criminal episode, notwithstanding the fact that defendant had the same general criminal objective for each and was not interrupted before she was caught and arrested. In *Burns*, we rejected a substantially similar argument. There, the defendant was convicted of two counts of criminal mistreatment in the first degree for spanking two of his children in short succession. The trial court concluded that

the defendant's offenses constituted two distinct criminal episodes and, accordingly, it applied the defendant's conviction on Count 1 in sentencing the defendant on Count 2. On appeal, the state argued that "the relevant inquiry for determining a defendant's criminal history score in a case involving multiple crimes against multiple victims is whether the defendant made discrete decisions to commit each offense, despite an overarching criminal objective." 259 Or App at 429. We reversed, noting that the state's argument was "not consonant with the text or intent of the criminal history rule" and "at loggerheads" with Supreme Court precedent rejecting the idea that separate criminal acts are *per se* equivalent to separate objectives. *Id.* (citing *State v. Boyd*, 271 Or 558, 565 n 4, 533 P2d 795 (1975), and *State v. Cloutier*, 286 Or 579, 595, 596 P2d 1278 (1979)). We were not persuaded by the state's argument in *Burns*, and we are not persuaded by it here.

Turning to defendant's argument, because we do not consider defendant's subjective intent in our analysis of the single criminal objective test, we are not persuaded by her argument that these offenses are part of a single criminal episode.[4]

In determining whether defendant's conduct constituted a single criminal episode under the single criminal

---

[4] Although we disagree with defendant's argument under the single criminal objective test, that argument does raise an important issue. In the indictment, the state joined all the offenses together with specific language:

"This count is connected together by two or more acts or transactions with the other counts of this charging instrument. This count is of the same and similar character as the conduct alleged in the other counts of this charging instrument. This count constitutes part of a common scheme or plan based on two or more acts or transactions with the other counts of this charging instrument."

The state's theory of the case was that all the mail was stolen and secreted for one purpose: defendant's overarching goal of obtaining money to pay for the care of her horses. The state obtained a substantial benefit from its initial position that the charges were closely related. Not only did that position allow joinder of the 12 counts for a single trial, it also provided a compelling trial theory as to why a postal worker would risk her job and serious criminal convictions by stealing mail. Having gained such a benefit at trial, it appears potentially unfair for the state to take the opposite position on the relatedness of the counts at sentencing simply to obtain the longest sentence possible. However, because defendant did not raise any constitutionally-based or estoppel-based challenges to the sentence below, we do not engage with the issue any further.

objective test, our inquiry "is not whether there is any difference in time and space at all, but whether there is enough of a difference in time, place, and circumstances surrounding the different acts to show that defendant's conduct was directed toward separate criminal episodes." *Burns*, 259 Or App at 430. Here, the charged offenses were not continuous and uninterrupted as measured by time, place, and circumstances such that they were directed to the accomplishment of a single criminal objective. The charged offenses took place over a nearly two-year period. Each theft by taking offense was separated from the other by a period of days, weeks, or months, with the final theft by taking charge separated from the theft by secreting and identity theft charges by three months. Although all the charged offenses occurred on defendant's carrier route, the place in which each charged offense occurred necessarily differed by the various locations from which defendant took the mail along that route. Given those circumstances, and removing from the picture, as we must, defendant's subjective intent to unlawfully gain money to care for her horses, we conclude that the state met its burden to prove by a preponderance of the evidence that defendant's conduct constituted separate criminal episodes under the single criminal objective test.

Because defendants conduct constituted separate criminal episodes under both the cross-related test and the single criminal objective test, the trial court did not err when it sentenced defendant under ORS 137.717.

Affirmed.