524 March 20, 2024 No. 178

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RADLEY EARL CROOK,
*Defendant-Appellant.*

Lane County Circuit Court
21CR12555; A177182

Kamala H. Shugar, Judge.

Argued August 10, 2023.

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Defendant appeals a judgment of conviction for eight counts of encouraging child sexual abuse in the first degree (ECSA I), ORS 163.684.[1] On appeal, defendant raises 15 assignments of error. In assignments one through eight, defendant challenges the trial court's denial of his motions for judgments of acquittal (MJOA), arguing that the act of downloading images from the internet does not constitute the act of duplicating images under ORS 163.684. Defendant acknowledges that we held to the contrary in *State v. Pugh*, 255 Or App 357, 297 P3d 27, *rev den*, 353 Or 748 (2013), but he asks us to overrule *Pugh* as plainly wrong. We conclude that *Pugh* is not plainly wrong, and we decline to overrule it.

In assignments nine through 15, defendant challenges the trial court's calculation of his criminal history score under Oregon's felony sentencing guidelines, arguing that his conduct constituted a single criminal episode. The state acknowledges that the trial court may have incorrectly recalculated defendant's criminal history on Count 6. We agree that the court incorrectly recalculated defendant's criminal history on Count 6, but the recalculation did not result in any incorrect increase in defendant's criminal history. That is so because all the other counts were distinct acts that constituted separate criminal episodes; therefore, defendant's criminal history score was accurately set at the highest category, "A," on Counts 4 through 8. We affirm.

## I.  THE FACTS

The undisputed facts occurred "from March 6th until March 12th of 2021." During that time period, defendant downloaded eight images and videos depicting child sexual abuse from the internet to his cellphone, and he saved them as digital files in his download folder. Two files

---

[1] ORS 163.684 provides, as relevant:

"(1) A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells a visual recording of sexually explicit conduct involving a child or knowingly possesses, accesses or views such a visual recording with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it[.]"

depicted the same child and were downloaded within one minute of each other (Counts 5 and 6). Each of the other six files depicted a different child being sexually abused and the time between those downloads was at least 14 minutes and as long as 40 hours (Counts 1, 2, 3, 4, 7, 8).

## II. THE TRIAL

Defendant was charged with eight counts of ECSA I. He waived his right to a jury trial, and the case was tried to the court. The state proceeded on the theory that defendant's acts of downloading images constituted duplicating those images under ORS 163.684.[2]

Police detectives and a defense-retained digital forensics expert testified that the download process begins when a person sees an image or video on the internet that they wish to download to their cellphone. When the person clicks on the "three dots" next to the image and selects "download" from the list of options, they are sending a request to the hosting website for that image. The host site's automated response is to transmit the digital file "that's behind [the] link" to the requester who then has the ability to save and store the file on their cellphone. Once downloaded and saved on the cellphone itself, the person may access the image, often in higher quality resolution, without having to connect to the internet.

Defendant's testimony about the process he uses to download images and videos from the internet was consistent with the general process described by the detectives and defense expert:

"[PROSECUTOR]:  Okay. So, let's start there, okay? There's no images on your phone.

_____

[2] The state had two options for pleading criminal liability under ORS 163.684: (1) that defendant knowingly duplicated a visual recording of sexually explicit conduct involving a child, or (2) that defendant knowingly possessed such a visual recording with the intent to duplicate it. The indictment alleged that defendant "committed" the crime of ECSA I when, in each of eight instances, he "did unlawfully and knowingly possess and duplicate" images of child sexual abuse "being aware of and consciously disregarding" that the creation of the image involved child abuse. Although it is not clear whether the state intended to allege both theories here—duplication and possession with intent to duplicate—it did not include the phrase "with intent to" in the indictment and it expressly clarified at the time of trial: "The [s]tate has only pled that he duplicated them. There's one thing. We pled that he duplicated them. I guess we pled 'or possessed,' but we're electing the duplicate."

"What's the first thing you do? How do you search for the image?

"[DEFENDANT]:   I think what you're getting at is I go to Bing.

"[PROSECUTOR]:   Okay.

"[DEFENDANT]:   I type in, for the sake of what we're talking about, let's say I type in no nude preteens.

"[PROSECUTOR]:   Okay.

"[DEFENDANT]:   And I can either have it bring up a list of Web sites or going to have it bring up a list of images.

"[PROSECUTOR]:   Okay.

"[DEFENDANT]:   If I was on the images, I would click on that image and ask it to either bring up Web sites or—let's say an image comes up that I like.

"[PROSECUTOR]:   Okay.

"[DEFENDANT]:   And I click on it. It will either bring up an icon that says save or search. And if I want to save it, I want to put it in my download, then I hit save.

"[PROSECUTOR]:   Okay. And let's say—let's start first with just an image. Let's just say it's a picture, okay, and of, you know, a ten-year-old, something happening to them sexually. You can—you're at the Web site. You can actually just look at that image on your phone, right? You can see it right there?

"[DEFENDANT]:   Yes.

"[PROSECUTOR]:   Okay. Why do you need to save it?

"[DEFENDANT]:   It's part of the ritual. It's—I'm searching for this thing because I want it, and then I find it. I'm not going to remember it in ten minutes or in an hour or in a day. And, so, I save."

The trial court found defendant guilty on all counts and specifically found that defendant "duplicated the child pornography in each of the files that are in the State's exhibit" and that he "individually downloaded and duplicated each [file] in a separate and distinct episode." It sentenced defendant to a 119-month prison term.

## III.   THE FIRST EIGHT ASSIGNMENTS

### A.   *Standard of Review*

We review the denial of an MJOA to determine whether, viewing the evidence in the light most favorable to the state, "a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998); *see also State v. Allison*, 325 Or 585, 587-88, 941 P2d 1017 (1997) (applying same standard of review to the ruling from a bench trial). When that challenge presents an issue of statutory construction, we review for legal error. *State v. James*, 266 Or App 660, 665, 338 P3d 782 (2014).

### B.   *Denial of MJOAs*

Defendant contends that the trial court erred in denying his MJOA on each count. He argues that download-ing a digital image or video from the internet is not "dupli-cation" under ORS 163.684. In defendant's view, the ECSA I statute is intended to punish those who create and distrib-ute media files depicting child sexual abuse, but not con-sumers of those files. He asserts that in order to duplicate a file and commit ECSA I, a defendant must either possess the original or make a copy with the intent to disseminate it.

Defendant acknowledges our previous holding that downloading a file from the internet constitutes duplication under ORS 163.684. *Pugh*, 255 Or App at 365. We addressed the same question even earlier, albeit in a plain error con-text. *Id.* at 363 (discussing *State v. Urbina*, 249 Or App 267, 271, 278 P3d 33, *rev den*, 353 Or 103 (2012), which rejected a contention that it was beyond dispute that downloading and viewing images from a peer-to-peer file-sharing network was no different than picking up a magazine and viewing images in it). In *Pugh*, we examined our reasoning in *Urbina* as we addressed the issue of whether downloading images from the internet constituted duplication. As we explained:

> "We see no difference between creating a personal copy of child pornography through downloading from a peer-to-peer network and downloading from independent sources on the Internet. In both situations, the original image

remains with the original owner, and a copy is saved onto the downloading party's computer."

*Pugh*, 255 Or App at 364. We further stated:

> "When a computer user downloads images depicting child pornography, the original owner allows the computer user to duplicate the images onto the user's computer, and keeps the original images on the original owner's Internet server."

*Id.* at 364-65. We observed that even though the owner retains the original file, the "downloader [is] liable if that person knew that the contents of the original image contained child pornography but chose to create another set of images anyway." *Id.* at 365. We also analyzed ORS 163.684 using the familiar process of statutory construction that was outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and modified by *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009), and concluded that "downloading a video to a personal computer is the type of proliferation of child pornography that the legislature intended to prohibit when it enacted ORS 163.684." *Pugh*, 255 Or App at 364.

We overrule precedent only when it is plainly wrong, a rigorous standard satisfied only in exceptional cases, and the party seeking to change a precedent must affirmatively persuade us that we should abandon our prior decision. *State v. Civil*, 283 Or App 395, 415-17, 388 P3d 1185 (2017). As we have explained, we examined our *Urbina* decision in *Pugh*, and we engaged in the usual method of statutory construction to conclude that downloading files from the internet goes beyond mere possession and instead creates a copy of the file, which itself amounts to the type of proliferation of child pornography that ORS 163.684 was intended to stop. We are not persuaded that *Pugh* is plainly wrong, and we decline to overrule it. The evidence that defendant downloaded and saved the images to his cellphone and that he was aware that they depicted child sexual abuse was not disputed, and that evidence is sufficient to allow a rational finder of fact to conclude that the state proved each element of ECSA I beyond a reasonable doubt. The trial court did not err when it denied defendant's MJOAs.

### IV.    THE LAST SEVEN ASSIGNMENTS

A.    *Standard of Review*

We review defendant's sentence for legal error. *See* ORS 138.105(7), (8)(c)(A). "Whether conduct giving rise to convictions constitutes a single criminal episode is a question of law, although the answer to that question may depend on predicate findings of historical fact." *State v. Dent*, 324 Or App 167, 172, 525 P3d 487 (2023) (internal quotation marks omitted).

B.    *Reconstituting Criminal History Based on Separate Criminal Episodes*

In his second set of assignments, defendant contends that the trial court erred when it found that Counts 2 through 8 were separate criminal episodes for the purpose of calculating his criminal history score under the sentencing guidelines grid, OAR chapter 213, division 4. The state acknowledges that Counts 5 and 6 "may have involved a single uninterrupted course of conduct" given that those downloads were less than one minute apart and involved images of the same child victim. The state thus allows for the possibility that the trial court erred in reconstituting defendant's criminal history score on Count 6 but argues that such error was harmless because "defendant's criminal history score was already at the maximum of 'A' by the time the trial court correctly reconstituted it for [C]ount 4[.]" For the reasons that follow, we conclude that the trial court incorrectly treated Counts 5 and 6 as separate criminal episodes; however, we also conclude that that did not affect defendant's criminal history, which was correctly stated for each count.

Defendant was sentenced under the Oregon sentencing guidelines. The trial court calculated defendant's presumptive sentence by juxtaposing (1) the seriousness of the crime committed with (2) defendant's criminal history at the time of sentencing, and then assigning him a corresponding grid-block score. OAR 213-004-0001. The trial court correctly classified the criminal offense of ECSA I as a category "8" on the crime seriousness scale. OAR 213-017-0004(15). Defendant's criminal history was categorized according to the nature and extent of his prior convictions at the time he

was sentenced. OAR 213-004-0006. Criminal history categories range from the lowest category of "I" which indicates no prior "juvenile adjudication for a felony or any adult conviction for a felony or Class A misdemeanor," to the highest category of "A" which indicates that the defendant has been convicted of "three or more person felonies in any combination of adult convictions or juvenile adjudications." OAR 213-004-0007.

At the time his sentencing began, defendant had no prior criminal history. On Count 1, the trial court scored defendant as an "8-I" and sentenced him to a prison term of 16 months. Defendant does not challenge his sentence on Count 1. With each subsequent count, however, the trial court recalculated defendant's criminal history category to reflect his conviction(s) on the previous count(s), and it is those recalculations of criminal history to which defendant assigns error.[3]

_____

[3] This table sets forth each count sequentially as charged in the indictment with related information about the victim, time of download per testimony of one of the police detectives, amount of time between the download charged and the download most recently accomplished in chronologic order, grid block, and sentence. It is included here for ease of reference as we explain our analysis and conclusions regarding defendant's last seven assignments of error.

| Count | Victim | Date & Time of Download | Time from previous download | Grid block | Sentence |
|-------|--------|-------------------------|-----------------------------|------------|----------|
| 1 | A | March 11 – 8:57 AM | 14 minutes | 8-I | 16 months |
| 2 | B | March 11 – 8:43 AM | 5 hours, 30 minutes | 8-D | 27 months |
| 3 | C | March 11 – 2:34 AM | 28 hours | 8-B | 35 months |
| 4 | D | March 6 – 6:47 PM | 0 (First download) | 8-A | 41 months |
| 5 | E | March 8 – 10:50 AM | 40 hours | 8-A | 41 months, concurrent |
| 6 | E | March 8 – 10:50 AM | < 1 minute | 8-A | 41 months, concurrent |
| 7 | F | March 9 – 10:37 PM | 36 hours | 8-A | 41 months, concurrent |
| 8 | G | March 11 – 3:13 AM | 45 minutes | 8-A | 41 months, concurrent |

A trial court may reconstitute a defendant's criminal history score for multiple convictions in the same proceeding only if the convictions constitute separate criminal episodes under statutory and constitutional double jeopardy provisions. *State v. Dulfu*, 363 Or 647, 649, 426 P3d 641 (2018). "Thus, a conviction does not count toward a defendant's criminal history score if, for double jeopardy purposes, it arose out of the same criminal episode as the crime for which the defendant is being sentenced." *Id.*

There are three alternative tests "for determining when a prosecution for one charge will bar a later prosecution for another charge." *Id.* at 669-70. The first test, referred to as the "cross-related" test, asks whether the charges "are so closely linked in time, place and circumstances that a complete account of one charge cannot be related without relating details of the other charge." *Id.* at 670 (internal quotation marks omitted). The second test asks whether the charges arose out of a "single criminal episode," defined as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." *Id.* (internal quotation marks omitted). The third test examines whether the criminal charges are "based on the possession of contraband." *Id.* These are alternative tests and, therefore, an affirmative result on any one of the tests would mean that the convictions involve a single criminal episode and cannot be used to reconstitute the defendant's criminal history for purposes of sentencing the defendant on those convictions.

We begin with the third test, the possession of contraband, and conclude that it does not yield an affirmative result. Defendant argues, relying on *Dulfu*, that ECSA I is an inherently possessory offense and therefore, his conduct constitutes a single criminal episode. Defendant reads *Dulfu* too broadly because in that case, the state did not elect a theory under ORS 163.684, and the jury verdict form did not identify the theory on which the jury reached its verdict. *Dulfu*, 363 Or at 672. The court thus analyzed the defendant's charges under the theory that the defendant possessed the images with the intent to duplicate them. *Id.*

at 674. Here, the prosecutor clarified that the state was proceeding solely on a theory of duplication, and the trial court made findings and convicted defendant of ECSA I under the sole theory of duplication. In short, defendant was not charged with mere possession of the images in question. He was charged with duplicating those images. Even if we were to accept defendant's argument that ECSA I is a possessory offense, defendant was charged for the conduct that culminated in his possession of the files, *i.e.*, his act of duplicating the images in question. And when the state criminally charges and prosecutes crimes based on the underlying conduct that culminates in possession, rather than on possession itself, double jeopardy is not implicated. *See, e.g.*, *State v. Oliver*, 26 Or App 331, 334-35, 552 P2d 562 (1976); *State v. Wilder*, 305 Or App 618, 634, 471 P3d 798 (2020), *rev den*, 367 Or 535 (2021).[4]

We next turn to the "cross-related" test, which examines whether charges are part of the "same act or transaction." *Dulfu*, 363 Or at 655. "[T]wo charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." *State v. Fitzgerald*, 267 Or 266, 273, 516 P2d 1280 (1973). Overlapping evidence does not necessarily establish that charges are cross-related. *Dent*, 324 Or App at 174.

In *Dent*, we determined that instances of mail theft that occurred over a two-year period at different stops on a mail carrier's route were properly regarded as separate criminal episodes. *Id.* at 169, 174. We determined that

---

[4] In *Oliver*, the defendant argued that he could not be serially prosecuted for illegal elk possession and livestock theft because the contraband had been discovered simultaneously—both the elk and livestock carcasses were discovered hanging side by side in the defendant's shed. 26 Or App at 333. The court held that the serial prosecutions did not violate double jeopardy principles as articulated in *State v. Boyd*, 271 Or 558, 533 P2d 795 (1975): "[W]e would reach a different result[] if the theft charge were based on defendant's mere possession of the steer ***. Here, however, defendant was charged with the act which culminated in his possession of the steer[.]" *Oliver*, 26 Or App at 334-35. Similarly in *Wilder*, the court held that prosecution for unlawful hunting did not preclude subsequent prosecution for felon in possession of a firearm because "the state based the unlawful hunting charge on defendant's conduct, not mere possession of contraband." 305 Or App at 634.

the charges were not cross-related because "each piece of postmarked mail would have been enough to prove the elements of mail theft by taking." *Id.* at 174. Similarly, in *State v. Spynu*, 278 Or App 250, 251, 372 P3d 622 (2016), the defendant submitted multiple false claims for payment as a home health care worker. We concluded that, although the crimes were repetitive in nature and involved overlapping evidence, a "'complete account' of any single one of the theft charges could be related without relating the details of the other charges." *Id.* at 253. By contrast, in *State v. Nesbit*, 274 Or App 694, 696, 699, 361 P3d 649 (2015), the defendant filed a single false benefit claim with an insurance company and then cashed multiple insurance checks over the course of a year, resulting in multiple charges for aggravated theft. The court held that the charges were cross-related because "a complete account of why defendant committed theft each time he deposited one of the insurance checks issued to him would *necessarily* include the detail that [the insurance company] issued the check pursuant to defendant's initial false claim for benefits." *Id.* at 699 (emphasis in original). Here, as in *Dent* and *Spynu*, any individual ECSA I charge could be described without any mention of the details of the other charges. Evidence establishing each download would be sufficient, without evidence of any other download, to prove the elements of ECSA I. Although there is some overlapping evidence concerning file location, for example, that alone is not sufficient to establish that the charges are cross-related.

Defendant's reliance on *State v. Cale*, 263 Or App 635, 641, 330 P3d 43 (2014), is misplaced. There, the defendant was charged with multiple counts of ECSA I after he took sexually explicit photos of his girlfriend's child and then transferred them from his camera to his phone, *id.* at 637-38, and the only evidence about the transfer of the images was that the "pause between the transfer of the three photos *** [was] an invariable two-second gap between each transfer time stamp." *Id.* at 639. We held that that evidence was insufficient to permit a reasonable factfinder to determine that the files had not been uploaded concurrently. *Id.* at 640. Here, the gaps in time are much more significant, and therefore, the download times present stronger evidence that the files were not downloaded concurrently. Moreover,

defendant's own testimony, previously quoted, explaining the process by which he finds and downloads images also supports an inference that he independently downloaded each file. His testimony in conjunction with the time stamps of the downloads permits a reasonable factfinder to conclude that he downloaded the files at separate times. Each of the charges against defendant is supported by evidence of how he downloaded the image in question. Although the evidence may sometimes overlap, establishing each count does not require that the details of the other counts be related. The charges and convictions are not cross-related.

Turning next to the "same criminal objective test," we examine whether the charges stem from "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." *Dulfu*, 363 Or at 655 (internal quotation marks omitted). "[T]he standard is not whether there is any difference in time and space at all, but whether there is enough of a difference in time, place, and circumstances surrounding the different acts to show that defendant's conduct was directed toward separate criminal objectives." *State v. Burns*, 259 Or App 410, 430, 314 P3d 288 (2013). A criminal objective, "refers to the pursuit of some object or attainment of some goal beyond the successful commission of the acts constituting the offense charged." *State v. Cloutier*, 286 Or 579, 599 n 21, 596 P2d 1278 (1979).

The state acknowledges that the question of whether defendant's conduct constituted separate criminal episodes is closest under this test, especially—as noted above—with respect to Counts 5 and 6. Defendant argues that there is insufficient evidence that the downloads were separated by enough time or other circumstances to show that he did not act with a single criminal objective—to satisfy his pornography addiction.

But the question of criminal objective is not answered simply by broadening the scope of defendant's intent. *See Wilder*, 305 Or App at 630. We find *State v. Martin*, 322 Or App 266, 519 P3d 132, *rev den*, 370 Or 694 (2022), particularly instructive. The defendant in *Martin*

was charged with multiple counts of felony public indecency after he exposed himself to women working drive-through service windows at five separate restaurants on the same night, between 6:00 p.m. and 1:00 a.m. 322 Or App at 267. He argued that each incident that night had the same "single criminal objective of exposing himself for the purposes of sexual arousal" and that they should, therefore, be treated as a single criminal episode. *Id.* at 269 (internal quotation marks omitted). Applying the definition of criminal episode in ORS 131.505(4), grounded in the former jeopardy statutes, we rejected that argument. *Martin*, 322 Or App at 268-69. We concluded that, even under defendant's framing of his criminal objective as being "exposing himself for the purposes of sexual arousal," the time, place, and circumstances of defendant's conduct established that he achieved his objective "*separately* at each drive-through." *Id.* at 270 (emphasis added). We explained that the defendant had "committed each exposure at a different time, and [location] miles apart," and that his conduct was directed to individual victims. *Id.* at 270-71. Under those circumstances, we concluded that "it would *** not make sense to convert defendant's five targeted exposures into one criminal episode merely by framing his objective more broadly." *Id.* at 271. That is because the facts "indicate that each exposure was in pursuit of a more immediate and separate objective of exposing himself for sexual gratification and was thus a separate criminal episode." *Id.* at 271 (internal quotation marks and brackets omitted); *see also Wilder*, 305 Or App at 631 ("Although [the] defendant may have formed an overriding goal to facilitate a father-son hunting trip, the record supports the determination that his unlawful hunting and possession of the shotgun were in pursuit of more immediate and separate objectives ***. *** To conclude otherwise would allow a defendant to convert numerous wildlife violations or firearm offenses into a single criminal episode by merely forming a broad intent to foster family bonding through hunting."). As we explained, sexual gratification "is not a 'discrete' goal, in that [the defendant] did not need to expose himself a specific number of times to achieve it. It is more akin to the 'distant and overriding' goals of running

a drug-dealing enterprise and fostering father-son bonding through hunting." *Martin*, 322 Or App at 273.

Here, we accept what amounts to a state concession that the conduct charged in Counts 5 and 6 constitutes a single criminal episode. Those images were of the same victim and were downloaded within less than one minute of each other, supporting the determination that that conduct was continuous, uninterrupted, and occurred under circumstances supporting the same criminal objective. However, for the same reason expressed in *Martin*, there was sufficient evidence to support the trial court's findings that the downloading of images charged in the remaining counts constituted separate criminal episodes. Given that, the fact that the court recalculated the criminal history on both Count 5 and Count 6, rather than only one of them, had no effect on defendant's criminal history category, which was correctly stated as "A" for both of those counts. The court did not err in recalculating defendant's criminal history.

Affirmed.